THE DENISON COTTON MILL COMPANY, Appellee, *vs.*
W. IRVING SCHERMERHORN *et al.* Appellants.

*Opinion filed December 17, 1912—Rehearing denied Feb. 5, 1913.*

1. APPEALS AND ERRORS—*when a constitutional question is involved.* An appeal from an order finding the defendants guilty of contempt for refusing to permit an examination of their books under an order of court is properly taken to the Supreme Court as involving a constitutional question, where one of the errors assigned is that the order violated the constitutional right of the defendants to be secure against unreasonable searches and seizures, and it is manifest if the order is illegal it is upon that ground.

2. EVIDENCE—*materiality of evidence to be obtained from inspection of books need not appear from pleadings.* To authorize the court, under section 9 of the Evidence act, to enter an order requiring either of the parties to produce for inspection books or writings in their possession or power which contain evidence pertinent to the issue, it is not essential that the materiality of the evidence shall appear from the pleadings, but it is sufficient if it appears from the affidavits filed in support of the motion.

3. SAME—*how the rights of a party ordered to produce books are protected.* The court will not require a party to produce books and papers for inspection unless it is made to appear that they contain evidence pertinent to the issue, and such party has a right to seal up and conceal such parts of the books as, according to the affidavit in support of the motion for the order, do not relate to the matters in question.

4. SAME—*an order to produce books may authorize taking of memoranda therefrom.* An order, entered under section 9 of the Evidence act, requiring a party to produce books or papers in his possession or power containing evidence pertinent to the issue, may provide that memoranda may be taken from such books concerning the matters involved in the suit.

5. SAME—*merits of a trover case cannot be determined in ancillary proceeding to require production of books.* In an action of trover, where it is claimed that the defendants have purchased materials stolen from the plaintiff, the merits of the case cannot be tried in the ancillary proceeding, under section 9 of the Evidence act, to require the defendants to produce books and papers for the inspection of the plaintiff.

6. SAME—*an order need not provide for inspection of books in presence of court.* An order, entered under section 9 of the Evidence act, requiring the defendants to allow the plaintiff to inspect

certain books and papers, is not erroneous because it permits such inspection to take place at the office of the defendants and not in the presence of the court.

7. CONSTITUTIONAL LAW—*section 9 of the Evidence act is not unconstitutional.* Section 9 of the Evidence act, authorizing the court, upon motion and for good cause shown, to require either party to produce for inspection books or papers in their possession or power containing evidence pertinent to the issue, is a valid, constitutional enactment.

8. CONTEMPT—*when imprisonment until compliance with order is appropriate.* Where the defendants to an action in trover refuse, without legal excuse, to obey a lawful order of the court requiring them to permit the plaintiff to inspect certain books and papers in their possession, an appropriate punishment for their contempt is a commitment to jail until the order is complied with, as a fine or imprisonment for a definite term might not secure obedience to such order.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

FREDERICK A. BROWN, and WILLIAM R. T. EWEN, JR., (RAYMOND S. PRUITT, of counsel,) for appellants.

ADAMS, BOBB & ADAMS, (G. L. WIRE, of counsel,) for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The Denison Cotton Mill Company brought an action of trover against the Schermerhorn Bros. Company in the circuit court of Cook county, alleging that the plaintiff had casually lost, and that the defendant had found, 175,000 pounds of cotton duck, 10,000 pounds of cotton sheeting and 12,000 pounds of cotton bagging. To this declaration defendant filed the general issue. While the action was pending plaintiff filed a motion for and procured an order permitting an examination of the books and memoranda in the office of defendant supposed to contain evidence material to the issues in the action of trover. Defendant re-

257 — 9

sisted the application for the order for the inspection of its books and excepted to the entry of the same. W. Irving Schermerhorn and Lucas R. Schermerhorn, co-partners doing business as Schermerhorn Bros. Company, were cited to show cause why they should not be punished for contempt of court for their refusal to permit an examination of their books. A hearing was had resulting in a finding that the defendants were guilty of contempt and an order committing them to the common jail of Cook county until they complied with the order of the court or until they were otherwise discharged according to law. This appeal is prosecuted for the purpose of obtaining a review of the order finding the defendants guilty and committing them to jail.

Appellants prayed an appeal to the Appellate Court. The trial court denied an appeal to the Appellate Court but granted an appeal to this court. Appellants assign error upon the refusal of the court to grant the appeal to the Appellate Court and argue the question of jurisdiction. One of the errors assigned is, that the order for the inspection of appellants' books is in violation of their property and constitutional rights. Throughout this entire proceeding the appellants have strenuously contended that the order for the inspection of their books was an invasion of their right, under the constitution, to be secure against unreasonable searches and seizures of their private books and papers. Manifestly, if the order of the court below is illegal for any reason it is because it invades a constitutional right of appellants. Whether, under the facts before the court, the order for inspection is a violation of the appellants' constitutional rights, so far involves a construction of the constitution as to give this court jurisdiction by a direct appeal. The case of *Lester* v. *People,* 150 Ill. 408, is an authority which directly decides the jurisdictional question, and is in all essential respects similar to the case at bar. The jurisdictional question is discussed

in the additional opinion filed on the rehearing, in which, on page 426, it is said: "It is insisted, also, that the appeal should have been dismissed for the reason that this court was without jurisdiction, and that if appeal was allowable it should have been taken to the Appellate Court. A construction of the constitutional provision providing for security against unreasonable searches and seizures of papers and effects of the citizen is fairly raised and pressed in argument. We are of opinion that a construction of the provision of the constitution is so far involved as to give this court, under the statute, jurisdiction on direct appeal. The motion to dismiss the appeal was properly overruled." (See, also, *Swedish-American Telephone Co.* v. *Fidelity and Casualty Co.* 208 Ill. 562, and *Walter Cabinet Co.* v. *Russell,* 250 id. 416.) The appeal was properly granted to this court.

Whether the order for the inspection of the appellants' books was properly entered is raised upon this record by appropriate assignments of error.

This is a summary proceeding under section 9 of the statute on evidence, which provides that the several courts shall have power, in any action pending before them, upon motion and sufficient cause shown and reasonable notice thereof given, to require the parties, or either of them, to produce books or writings in their possession or power which contain evidence pertinent to the issue. In the case at bar the power of the court under this statute was invoked by a motion in writing that an order be entered upon appellants to produce for inspection by appellee's agents, auditor and attorneys, their ledgers, journals, cash books, invoice records, statement records, purchase and sales records, and all other books and files of original entries containing entries of or pertaining to the kind, character, quality and price paid for goods, wares and merchandise purchased from a concern known as Lee Huffman & Co., of Dallas, Texas, during the years from 1905 to 1910, in-

clusive.  In support of this motion appellee submitted the affidavits of W. B. Munson and G. L. Wire.  The affidavit of Munson is as follows:

"W. B. Munson, being first duly sworn, deposes and says that he is the president of the Denison Cotton Mill Company, plaintiff in the above entitled cause; that the said corporation is duly organized and existing under and by virtue of the laws of the State of Texas, with its principal place of business at the city of Denison, county of Grayson and State of Texas, and is engaged in the manufacture and production of cotton fabrics.  Affiant further says that covering a period of two years and a fraction of a year, during the years 1907, 1908, 1909 and 1910, one T. L. Clarke, an employee of the plaintiff, stole from the plaintiff large quantities of manufactured cotton fabrics, commonly known as cotton bagging, cotton duck, cotton sheeting and other fabrics, of which, by means of a mythical concern known as Lee Huffman & Co., he sold large quantities of the goods so stolen to the defendant, Schermerhorn Bros. & Co., the exact amount, quality, quantity and value thereof being unknown to the plaintiff.  This affiant further avers that the defendants caused their bookkeeper to take a statement from their books with regard to the amounts so purchased by the said defendants from the said Lee Huffman & Co., and that the total of such purchases as given by the defendants to this plaintiff was $26,010.70.  This affiant further states that when the thefts of the said Clarke were discovered, the plaintiff herein secured written statements signed by Lee Huffman & Co. acknowledging that the said goods were stolen from and belonged to the plaintiff herein; that such statements were given to the plaintiff by said Clarke, signed in the same manner as he had signed his letters in handling the business of Lee Huffman & Co.; that one of the statements was addressed to the defendants herein and delivered to them, after which they made two payments to the plaintiff,

being $1016.19 and $843.95, respectively, covering the balance shown by the defendants' books to be due to said Lee Huffman & Co. on account of goods received by them from the said Lee Huffman & Co. Affiant further avers that he has requested of the defendants an inspection of their books, papers and memoranda relating to their transactions with Lee Huffman & Co., and that the defendants have refused the plaintiff any inspection. Affiant further avers that the defendants are indebted and liable to the plaintiff in the sum of not less than $20,000 and not more than $35,000. Affiant further avers that the only books, papers and records by which the total amount of the indebtedness and liability aforesaid can be determined are in the possession of the defendants, and the plaintiff is denied access thereto, as hereinbefore set forth. The affiant further avers that he knows of no other source from whence to obtain facts or evidence by which to establish the total amount of the defendants' indebtedness and liability to the plaintiff. Affiant further avers that the books, papers and memoranda in the possession of the defendants which refer and relate to the transactions of the defendants with the said Lee Huffman & Co., and which disclose the kind, character, quality, amount and price of the goods, wares and merchandise purchased by the defendants from the said Lee Huffman & Co. are as follows: Ledgers, journals, cash books, invoices, records and files, and all other books of original entry and all files pertaining to goods purchased and sold. Affiant further avers that it is necessary to the proper preparation of plaintiff's case for trial, that said books be examined and inspected by the plaintiff's agent, auditor and attorney before the trial of the said case, as to all matters aforesaid, in order that the plaintiff may be properly prepared for trial, and also that the said books, papers and memoranda should be produced before trial, by order of this court, for that purpose. Affiant further avers that the entries made in the several books,

papers and memoranda hereinbefore enumerated constitute evidence pertinent to the issues in this case, and plaintiff cannot safely proceed to trial without the production and inspection of the said books, papers and memoranda before such trial."

The affidavit of G. L. Wire was the same, in substance, as that of Munson, except Wire states that appellants purchased goods from the concern known as Lee Huffman & Co. during the years from 1905 to and including 1910. No counter-affidavits were presented by appellants. Upon this showing the court entered an order directing appellants to permit the appellee to examine "ledgers, journals, cash books, invoice records, statement records, purchase and sale records, and all other books and files of original entries containing entries or memoranda pertaining to the kind, character, quality and quantity and price paid for goods, wares and merchandise purchased or obtained by appellants from the concern known as Lee Huffman & Co., of Dallas, Texas, during the years 1905 to 1910, inclusive." The order permitted appellee to make notations and memoranda of such book entries sufficient to determine the quantity, quality, character, kind and price paid for said goods, and that said examination should take place within sixty days from date at the office of appellants, room 606 Tacoma building, Chicago, Illinois, upon giving to appellants twenty-four hours' notice. Upon the entry of this order appellants moved to vacate the same, and in support of the motion to vacate submitted the affidavit of L. R. Schermerhorn, in which two statements are made which are relied upon by the appellants as legal reasons why the court should have vacated the order for the inspection of books. The first statement in this affidavit is, that the T. L. Clarke referred to in the Munson and Wire affidavits was a director and a stockholder in the Denison Cotton Mill Company and was in charge of the manufacturing and selling of the products manufactured by the

said company, and that at the times when appellants purchased merchandise from Lee Huffman & Co. said Clarke was such stockholder, manager and director in the appellee company, and that he also conducted business under the name of Lee Huffman & Co. The other fact stated in the affidavit is, that appellants and appellee are competitors in business, each endeavoring to sell to the same customers throughout the United States the same class of merchandise, and that an examination of appellants' books would disclose to appellee the names and residences of its several customers, by means of which the appellee, its competitor, would obtain an unfair advantage of appellants and greatly disturb their trade among their customers throughout the country. Appellee served notice on appellants, in pursuance of the order of the court, that it would appear at appellants' place of business to examine the books, which privilege appellants refused to grant. Subsequently this notice was filed in court, and affidavits of appellee's attorney and G. L. Wire, its agent, were filed showing the refusal of appellants to comply with the order of the court and asking for a rule upon appellants to show cause why they should not be attached and punished for contempt of court. The rule was entered and appellants filed an answer thereto, in which their several contentions in regard to the validity of the order are stated. Upon a hearing the court found appellants guilty of contempt and entered the order committing them to jail, and this appeal followed.

Appellants contend that the materiality of the evidence contained in the books and memoranda is not made to appear. If the pleadings alone are considered, without reference to the affidavits, the materiality of the books would not appear, but when the issues are considered in connection with the affidavits it is apparent that appellee is proceeding in an action of trover for the value of certain goods which are alleged to have been stolen from appellee and sold to appellants. It is appellee's contention

that Clarke, acting under the name of Lee Huffman & Co., sold to the appellants, at various times from 1905 to 1910, large quantities of manufactured goods which said Clarke had feloniously stolen from appellee. Under this theory of the case appellee is required to prove its ownership of the goods and that they were stolen and afterwards sold to appellants. Manifestly, the books of appellants showing the quantity, quality and price of the goods purchased from Lee Huffman & Co. will become material and pertinent to the issue that will ultimately be tried between the parties. The law does not require that the materiality of the evidence shall appear from an inspection of the pleadings, alone. If this were necessary, an order for the inspection of books could never be obtained in support of an action of trover or of assumpsit under the common counts, since neither of these forms of declaration indicates what line of evidence may become material. It is sufficient that the materiality of the evidence appears from the facts stated in the affidavits in support of the motion.

Appellants contend that the order is erroneous in that it authorized an inspection of the books for six years while the affidavits show that the transactions covered a period of but two years and a fraction. This is a misapprehension. It is true, the affidavit of Munson only relates to two years and part of another, but Wire's affidavit states that the transactions covered a period from 1905 to 1910, inclusive, and this is not contradicted.

It is next suggested that the order is too broad, in that it permits an inspection of the entire books. The order only allows the examination of entries pertaining to the kind and character of goods, and the price paid for the same, bought of Lee Huffman & Co. The law will not permit an abuse of the privilege of inspection. The rights and interests of the owner of the books and papers must be regarded, and the court will not compel him to submit for inspection his books of account to other persons un-

less it is made to appear that they contain evidence perti-
nent to the issues involved.    Where a party is required to
produce his books of account for inspection, he will have
leave to seal up and conceal all such parts of them as, ac-
cording to affidavit previously made and filed, do not re-
late to the matters in question.   (*Pynchon* v. *Day,* 118 Ill.
9.)   Under the rule of law laid down in the case last
above cited, appellants can be secured against extending
the inspection beyond lawful bounds.   The order entered
does not authorize the inspection of any books or papers
other than those that are pertinent to the issues.

Appellants next suggest that the affidavit of L. R. Scher-
merhorn shows that appellee has no cause of action, and
that for that reason it was error to enter the order.   The
merits of the action of trover cannot be determined in the
ancillary proceeding to obtain an inspection of books.   We
express no opinion upon the merits of the case.   It would
be manifestly unfair to appellee to pre-judge the merits
of its case in a summary proceeding instituted for the pur-
pose of obtaining evidence to support its claim.   When
appellants comply with the order of the court and furnish
appellee with whatever evidence the books and papers may
contain pertinent to the issue involved in the trover case,
and that case is tried on its merits, it will be time enough
to determine all questions relating to that controversy.

It is next objected that the order permitted appellee to
make memoranda from the books.   The order in this re-
spect, as well as in regard to the next point, which is,
that the examination was for the purpose of preparing for
trial, is sustained by *Swedish-American Telephone Co.* v.
*Fidelity and Casualty Co. supra.*

It is next objected that the order permitted the exami-
nation of the books outside of the presence of the court
and in the office of appellants.   The order in this respect
does not invade the property rights of appellants.   In *Les-
ter* v. *People, supra,* this court reversed an order for the

inspection of books because it required the party to bring his books and papers into court and impound them with the clerk for the inspection and examination of the parties. There is nothing illegal in the order in this respect. The order of the court requiring the submission of appellants' books for inspection was a legal order entered under a valid constitutional statute. There is no merit in the several contentions made by appellants why this order should be disregarded. The punishment to secure obedience to the mandate of the court is appropriate. A fine or imprisonment for a specified term might not secure obedience to the order.

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*