American Cigar Co. v. Berger, 221 Ill. App. 285.

## American Cigar Company, Appellee, v. J. Berger et al., in the matter of contempt petition against Dora Siegel et al., Appellants.

### Gen. No. 25,718.

1. INJUNCTION—*jurisdiction as precluding invalidity.* Where the court issuing an injunction order had jurisdiction of the subject-matter and over the persons involved, the injunction order could not be void.

2. INJUNCTION—*erroneousness of injunction not reviewable on appeal from contempt order.* Whether an injunction order was erroneous is a matter which cannot concern the court on an appeal which is not from the injunction order but from an order finding appellants to be in contempt for its violation, and punishing them therefor.

3. INJUNCTION—*how far may be questioned in contempt proceedings.* In proceedings in contempt for failing to obey an order of court, respondent may question the order only in so far as he can show it to be absolutely void and cannot be heard to say it was merely erroneous.

4. INJUNCTION—*finding effect of erroneous injunction.* Whether it was erroneous or not, an injunction order, as to which the court had jurisdiction of the subject-matter and the parties, remained valid and binding on all parties involved until modified or set aside upon appeal or writ of error.

5. INJUNCTION—*what constitutes collateral attack upon.* A contention that an injunction order violates certain provisions of the Constitutions of the State or the United States is a collateral attack which cannot be made on appeal from an order finding appellants in contempt for failure to comply with its provisions.

6. INJUNCTION—*grounds justifying disobedience.* One may refuse to obey an injunction order if it is absolutely void for want of power in the court to enter it, but cannot refuse to obey it on the ground that it was improvidently or erroneously entered, either because it violates the constitution or for any other reason.

7. APPEAL AND ERROR—*necessity for appealing directly to Supreme Court on constitutional questions.* Where matters involving a construction of the constitution are relied upon by an appellant, the appeal should be direct to the Supreme Court.

8. APPEAL AND ERROR—*waiver of constitutional questions by appeal to Appellate Court.* Perfection of an appeal to the Appellate Court constitutes a waiver of constitutional questions.

American Cigar Co. v. Berger, 221 Ill. App. 285.

9. APPEAL AND ERROR—*requisites of presentation of error.* The mere statement of an alleged error on a given point, without argument or the presentation of reasons supporting the stated contention, is not sufficient to present the point for decision.

10. APPEAL AND ERROR—*duty of appellant to analyze evidence.* If appellants contend that "a careful analysis of the evidence in this case will sustain" them, they should set forth such careful analysis in their argument, as it is no part of the duty of the court upon appeal to search the record for errors, alleged but not argued, by reason of which the order or judgment appealed from could be reversed.

11. INJUNCTION—*sufficiency of evidence to sustain finding of violation.* On appeal from judgments finding appellants in contempt of court in violating a temporary injunction order restraining them from interfering with appellee's employers, by congregating near its premises, annoying and assaulting its employees and calling them opprobrious names, the evidence examined and *held* to justify the finding of the court.

12. INJUNCTION—*immateriality of purpose of acts constituting violation.* Where the evidence established that appellants, following an injunction order restraining them from doing so and service of notice thereof upon them, were guilty of congregating in front of the appellee's place of business and interfering with its employees, it is immaterial what the object of their presence was.

13. APPEAL AND ERROR—*review of evidence.* Where the record contains much contradictory testimony, it is peculiarly the function of the trial judge, who sees the witnesses, to determine upon which side the truth is, and the Appellate Court cannot disturb the judgment or decree by reason of its view of the evidence, unless it is clearly manifest from the record that the greater weight of evidence does not support it.

14. INJUNCTION—*discretion of court as to punishment for violation.* The court granting an injunction is clothed with a large discretion in enforcing obedience to it and, in a proceeding for contempt for its violation, the extent of punishment to be inflicted rests in the sound legal discretion of the court with the exercise of which Appellate Courts will not interfere except for its abuse.

15. INJUNCTION—*sufficiency of evidence to sustain punishment for violation.* Evidence examined and *held* to justify the punishments imposed upon the various appellants for contempt of court in violating an injunction order restraining them from interfering with and intimidating the employees of appellee.

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court

American Cigar Co. v. Berger, 221 Ill. App. 285.

at the October term, 1919.  Affirmed.  **Opinion filed June 18, 1921.**
Rehearing denied July 15, 1921.

DANIEL L. CRUICE and FRED C. G. SCHMIDT, for appellants.

MAYER, MEYER, AUSTRIAN & PLATT, for appellee.

MR. JUSTICE THOMSON delivered the opinion of the court.

This is an appeal from an order finding appellants guilty of contempt of court and punishing them therefor, on a hearing upon a petition for a rule to show cause and answers thereto, which petition charged appellants with violation of an injunction theretofore issued pursuant to the prayer of a bill filed by the complainant, American Cigar Company.

There was a strike of the union employees connected with a branch of the appellee company in the City of Chicago.  In January, 1919, the company filed a bill setting forth, among other things, that it employed about 200 men and 400 women and girls; that it was engaged in the manufacture of cigars and doing a large business; that it made no distinction between union and nonunion employees and gave no preference to either, and, prior to the trouble complained of, did not know definitely who were the union and who were the nonunion employees.  The bill further recited that the company, upon discovering that representatives of the union had been in the habit of collecting dues from the union employees just after they had been paid, and had used that opportunity to attempt to persuade the employees who were not members of the union to join it, issued orders prohibiting these representatives the privilege of this so-called "shop collecting" which resulted in all the union employees of the company being called out on a strike.  The bill then alleged that the strikers im-

mediately organized for the purpose of picketing and patroling the factory affected and the employees were stopped on their way to and from work and were warned not to go to the factory to work and were told that they would be subjected to violence, if they did. It was further alleged that the pickets frequently followed employees of the company onto the street cars, as they were going home and reviled them with opprobrious names and epithets and called upon certain women employees at their homes and made threats against them and that in some instances such employees had been assaulted and beaten because they had refused to cease their employment. The bill charged that the defendants therein named "had conspired, combined, confederated and agreed together, with malicious intent, wrongfully and wilfully to injure the business and property of complainant and to deprive complainant of the lawful use and management of its property and to prevent by threats, suggestions of danger and other unlawful means, persons from being employed by and obtaining employment from complainant on such terms as they and complainant might agree upon, and with the intent to seek, by threats, intimidation and unlawful interference, to prevent complainant's employees, who were then engaged in work, from continuing their work, and to prevent those desirous of working from obtaining work at the factory." The bill prayed that an injunction might issue restraining the defendants from engaging in their alleged unlawful interference with the business of the complainant company and with its employees and the court entered a temporary injunction as prayed.

On February 5, 1919, the complainant filed a petition asking for a rule on appellants to show cause why they and each of them should not be punished for contempt of court for having violated the injunction. It was charged in the petition that the con-

spiracy, set forth in the bill filed, still continued and that pursuant thereto the specific acts alleged in the petition were done by appellants; that appellants, notwithstanding the injunction order, continued to congregate in the streets near the company's factory for the purpose of intimidating its employees and preventing them from rendering their services and discharging their duties to complainant and that they were continuing to interfere with its employees as they went to and from their work; that appellants continued to call complainant's employees vile and abusive names for the purpose of intimidating and coercing them in connection with their employment. In addition to charging such conduct generally, the petition set forth specific acts of misconduct alleged to have been done by each of the appellants in creating disturbances on the street, calling complainant's employees "dirty scabs" and "dirty swine," and, in one instance, engaging in an open assault. The answer of appellants admitted they were out on strike but claimed they had been locked out; it neither admitted nor denied notice of the injunction; denied the conspiracy charged and the various acts alleged and stated that they had done nothing except to assert the rights guaranteed them under the Constitutions of the State and of the United States and the decisions of the courts.

On the return of the rule, the court heard a large amount of evidence, consisting both of affidavits and oral testimony, and at the conclusion of the hearing the court made a finding in accordance with the allegations of the petition, that appellants, pursuant to a conspiracy and with malicious intent to injure the complainant's business and deprive it of its lawful use and for the purpose of preventing persons from obtaining employment from complainant and preventing complainant's employees from continuing their employment, had engaged in the activities which were

charged in the petition and which were prohibited in the injunction order and that in so doing appellants and each of them had been guilty of a wilful violation of the injunction, and were therefore in contempt of court.

The court then entered an order based on such a finding, wherein five of the appellants were fined amounts ranging from $25 to $50; two of them were fined $25 and sentenced to 5 days in jail; three of them were sentenced to 15, 30 and 60 days in jail, respectively. To reverse that order, the appellants have perfected this appeal.

Appellants contend that the provisions of the injunction order, which the court found them guilty of violating, are so broad and sweeping as to be meaningless and for that reason the finding referred to and the order appealed from cannot be sustained. That the court had jurisdiction of the subject-matter and over the persons involved cannot be controverted. Therefore the injunction order could not be void. Whether or not it was erroneous in the manner contended for by appellants is a matter which cannot concern us on this appeal, which is not from the injunction order but from an order finding appellants to be in contempt of court for their violation of the terms of the injunction order and punishing them therefor. It has been held repeatedly that in proceedings for contempt in failing to obey an order of court, the respondent may question the order which he is charged with refusing to obey, only in so far as he can show it to be absolutely void. He cannot be heard to say that it was merely erroneous. We do not hold that the injunction order involved in the case at bar was erroneous. Without regard to whether it was erroneous or not, the court had jurisdiction to enter it and it remained a valid, binding order on all parties involved, until modified or set aside upon appeal or writ of error. *O'Brien v. People,* 216 Ill. 354;

*Franklin Union No. 4 v. People*, 220 Ill. 355; *Lyon & Healy v. Piano, etc., Workers' Union*, 289 Ill. 176.

Appellants also contend that the injunction order violates certain provisions of the Constitutions of the State and the United States. This also is such a collateral attack on the injunction order itself, as cannot be raised on appeal from an order finding appellants in contempt of court by reason of their failure to comply with the provisions of the injunction order. If an injunction is issued which does violate constitutional provisions, the remedy of the parties enjoined is not to disobey the injunction. One may refuse to obey an injunction order where it is absolutely void for want of power in the court to enter it, but he cannot refuse to obey it on the ground that it was improvidently or erroneously entered, either because it violates the constitution or for any other reason. Assuming such contention to be correct, the injunction is nevertheless binding on the parties involved unless or until it is modified or set aside on appeal or review upon writ of error. *Christian Hospital v. People*, 223 Ill. 244. However, this contention that the injunction order violates certain constitutional provisions cannot be urged in this court. When matters involving a construction of the constitution are relied upon by an appellant, the appeal should be direct to the Supreme Court (Ill. Stat., J. & A. ¶ 8655), and when an appeal is perfected to this court, such questions are waived. *Lester v. People*, 150 Ill. 408; *Bratsch v. People*, 195 Ill. 165; *Denison Cotton Mill Co. v. Schermerhorn*, 257 Ill. 128; *Armour & Co. v. Industrial Board*, 275 Ill. 328; *Starck Piano Co. v. Stark*, 276 Ill. 413; *McDonald v. City of Spring Valley*, 285 Ill. 52; *Clark Teachers' Agency v. City of Chicago*, 220 Ill. App. 319. It should be added that injunction orders containing the same provisions which appellants here contend are in violation of certain constitutional guaranties have repeatedly been passed upon

by the courts of proper jurisdiction and the decisions are contrary to the contentions of appellants on this point.

It is next urged by appellants that the finding of the chancellor is against the manifest weight of the evidence in two respects. By their answer, appellants set forth that the purpose of their presence at the factory of the appellee company was "to notify the public and prospective employees that a strike or lockout was in progress and not for the purpose of intimidating or coercing the employees, officers or agents of the appellee." The only argument submitted by appellants in support of this proposition in their brief is found in the single sentence, "We believe a careful analysis of the evidence in this case will sustain the appellants in this respect." The other respect, in connection with which it is urged that the chancellor is not sustained in his finding by the evidence, has to do with a provision in the injunction order restraining appellants from "calling said employees harsh, vile or abusive names for the purpose of intimidating, threatening or coercing said employees in connection with their employment." The only observation in appellants' brief on this point is to the effect that "the weight of the evidence does not sustain the learned chancellor in so far as his order finds these appellants guilty of violating this provision." Nothing is more elemental in Appellate practice than the proposition that the mere statement of an alleged error on a given point, without argument or the presentation of reasons supporting the stated contention, is not sufficient to present the point for decision. If appellants wish to contend that "a careful analysis of the evidence in this case will sustain" them, they should set forth such "careful analysis" in their argument. It is no part of the duty of a court upon appeal to search the record for errors alleged but not argued, by reason of which the order

or judgment appealed from could be reversed. *Baltimore & O. S. W. Ry. Co. v. Alsop,* 176 Ill. 471; *Wickes v. Walden,* 228 Ill. 56. Although these matters are not properly before us, we have carefully examined the record and in our opinion neither point is well taken. Among other things, the injunction order restrained appellants "from doing any acts whatever in furtherance of any conspiracy or combination to restrain or obstruct either said company or any of its officers and employees in the free, uninterrupted and unhindered control and direction of its business and affairs," and also "from in any manner interfering with or molesting any person or persons who may be employed, or who may be seeking employment with said company in the operation of its business." The petition for the rule to show cause set forth that the appellants, with others, congregated in large numbers in front of the company's place of business and that they walked back and forth in front of the entrance to the building in which said company's factory was located and that as soon as its employees appeared, appellants would gather about them and "jostle and shove and annoy and molest them and hinder and prevent them from entering the premises of your petitioner or from leaving the same to go to their homes," and it also charged that appellants "have and continue to interfere with the employees of your petitioner as they go to and from their daily work." That appellants, following the entering of the injunction order and the service of notice thereof upon them, were guilty of congregating in front of the company's place of business and interfering with its employees is abundantly established by the evidence and, that being so, it is immaterial what the object of their presence was. But, in our opinion, the evidence was sufficient to establish further that appellants were guilty of conducting themselves, as charged in the petition, for the purpose of intimidating and coercing the company's employees in direct violation

of the various provisions of the injunction order. The evidence was conflicting. That submitted in support of the petition was to the effect that the strikers picketed in front of the company's place of business after the injunction order was entered, practically daily, in numbers varying from ten or a dozen to as high as fifty at a time; that as the company's employees who were not on a strike would approach or leave the building in which its factory was located, certain of the strikers would call them "dirty scabs" and "dirty swine" and other names of that sort in loud voices; that as the company's employees would come out of the building, the strikers, who up to that time would be walking back and forth in front of the building, would gather about the employees, forming "a driveway" through which the employees would have to pass; that pickets would shake their fists at employees as they passed to and fro; that they would obstruct the sidewalk, blocking the progress of the employees, and upon one occasion, a striker called out, "You dirty scab, we will get you"; that some of the strikers would frequently follow employees to the street cars and would board the cars and follow them all the way to their homes; that on one occasion one of the girl strikers "bumped" a girl employee while in a street car, knocking her hat off and another girl among the strikers struck another of the girl employees on the breast and shoulders and upon being placed under arrest by an officer, the striker hit him across the face with a book and then struck him in the face with her fist once or twice; that on one occasion one of the girl employees, as she was nearing the factory, was struck and knocked down and kicked. Certainly such conduct on the part of the strikers could have been indulged in by them for no purpose other than to intimidate or coerce the employees affected, and compel them to leave the company's employment. The references we have already made to

the evidence are sufficient to show that there was ample proof of the charge that appellants called the employees harsh, vile or abusive names and that this, too, was for the purpose of intimidating, threatening or coercing them in connection with their employment. There was evidence submitted in behalf of appellants contradicting that submitted in support of the petition, the appellants denying that they had used the language attributed to them and stating that they, on the contrary, were taunted and called vile names by the employees. The strikers testified generally to the effect that the employees were the aggressors in connection with the incidents described in their testimony. There were four witnesses for the appellants who were not among those engaged in the strike against the appellee company. One was an electrical worker, one was a baster and another a tailor in the employ of Hart, Schaffner & Marx, and the fourth was unemployed at the time of the hearing but had formerly been in the employ of the appellee company. Each of them corroborated appellants with regard to an incident which was involved in the testimony of witnesses on both sides. The manager of the appellee company and its employees, who testified in support of the petition, were corroborated in their accounts of the circumstances involved by eight police officers and the janitor of the building, in which the company's factory was located. Seven employees testified in support of the petition and twenty-three of the strikers testified for appellants. The appellants, ten in number, all testified. From our examination of all the testimony we are of the opinion that appellants' contention that the finding of the chancellor is not supported by the evidence is not tenable. To reverse the order appealed from on that ground we would be obliged to hold that the manifest weight of the evidence was against the finding of the trial court, and that the record does not warrant. If the court be-

lieved the witnesses testifying in support of the petition were telling the truth, and there is nothing in the record which would indicate that the court was not justified in so doing, there was an abundance of proof to support the finding and the order based thereon. Where the record, in such a proceeding as this, contains the testimony of many witnesses who so flatly contradict each other, as do many of the witnesses who testified in the case at bar, it is peculiarly the function of the trial judge, who sees them on the witness stand and observes their demeanor and their apparent fairness and frankness and honesty or the lack of those qualities, to determine upon which side of the controversy the truth lies, and when the court has determined the issues, one way or the other, and entered a decree or judgment accordingly, the law does not permit this court to disturb such judgment or decree, by reason of its view of the evidence, unless it is clearly manifest from the record that the greater weight of the evidence does not support it. We find no such situation in this case.

Appellants finally contend that the penalties imposed on them by the court are not in proportion to the offense committed. This point also is presented without any argument by appellants. As our Supreme Court has said in the recent case of *Ash-Madden-Rae Co. v. International Ladies' Garment Workers' Union*, 290 Ill. 301: "The court granting the injunction is clothed with a large discretion in enforcing obedience to it, and in a proceeding for contempt for its violation, the extent of the punishment to be inflicted rests in the sound legal discretion of the court, and courts of Appellate jurisdiction will not interfere with the exercise of such discretion except for its abuse." *Hake v. People*, 230 Ill. 174; *Leopold v. People*, 140 Ill. 552; *Carr v. District Court*, 147 Iowa 663; *In re Independent Pub. Co.*, 240 Fed. 849. In our opinion, no abuse of the discretion imposed by the law, in the

trial court, is shown by the record in this case. The court imposed a sentence of 60 days in the county jail upon the appellant Morris Price. The court found that in addition to his violation of the court's order, in generally interfering with the company's employees, on one occasion when he was picketing the company's premises, together with other strikers, one Anna Sirota, an employee, was assaulted and pushed down onto the sidewalk by Eva Glutting, one of the strikers, and that in the scuffle that ensued, Price kicked Anna Sirota in the side. The court imposed a sentence of 30 days in the county jail upon the appellant Harry Weiss. It appears from the record that this man was one of the leaders among the strikers. The court found that since the injunction order had been entered, Weiss had frequently patrolled and picketed in front of the company's factory, always with the intent and purpose charged in the petition; that on one occasion, as three of the employees were leaving the factory, he called out at them, "dirty scab," and was thereupon arrested and that he continued to call out those words after he was arrested and insisted that he had a right to do so. The court also imposed a sentence of 15 days in the county jail upon the appellant Esther Marynowski. The court found that after the injunction was entered, this appellant, with the intent charged in the petition, picketed and patrolled in front of the company's factory almost every day up to February 17, and continued to do so thereafter less frequently; that she often called the company's employees "dirty scabs" as they were going to and from the factory; that her actions caused her arrest on seven different occasions between January 23 and February 13; that on the occasion of the arrest of the appellant Weiss, she called out "scab" at the police officer; that on one occasion she got on the street car which had been boarded by some of the employees who were on their way home; that she and her companions reviled and

abused the employees and called them vile names and that she was arrested as she attempted to follow the employees after they had left the car; that on another occasion, 2 days later, she repeated that conduct; that she on the latter occasion bumped into one of the employees on the car, knocking her hat off; that she thereupon raised her hand and made a speech to the passengers on the car, reviling the employees who were present; that she then took a position in front of one of the girl strikers who was quietly and peaceably sitting in the car, and struck her a blow with her hand, whereupon she was arrested and that she struck the officer who arrested her in the face and caused great confusion and tumult by her conduct. The court imposed a fine of $25 and a sentence of 5 days in the county jail upon the appellant Anna Mazouch. The finding of the court recited that this girl had picketed and patrolled in front of the company's factory, with the intent charged, almost daily since the injunction order had been entered; that she joined with the others in calling the vile names complained of and in following the employees on the street cars and attempting to follow them as they left the cars on their way home. The court imposed a similar fine of $25 and 5 days in the county jail upon the appellant Eva Glutting, finding that she had been engaged in the same conduct and also that she had assaulted the employee Anna Sirota and pushed her down onto the sidewalk, as above described. The court imposed fines only, on the remaining five appellants, varying in amount from $25 to $50 finding that they had engaged in the general conduct complained of in violation of the injunction and with the intent and purpose as charged in the petition.

We find no error in the record and therefore the order of the superior court is affirmed.

*Affirmed.*

TAYLOR, P. J., and O'CONNOR, J., concur.