GEORGE A. CARDEN *et al.* Appellants, *vs.* MINNIE L. ENS-
MINGER, Exrx., *et al.* Appellees.

*Opinion filed April 21, 1928.*

1. EVIDENCE—*what necessary to compel production of books of
account.* To authorize an order compelling the production of doc-
uments and books of account which the party aplying therefor is
entitled to introduce in evidence and which the other party with-
holds, there must be, under section 9 of the Evidence act, good
and sufficient cause shown upon reasonable notice and the evidence
sought to be obtained must be pertinent to the issues in the case.

2. SAME—*court cannot order general investigation of account
books for all purposes.* An order for the production of evidence
under section 9 of the Evidence act cannot authorize a general in-
vestigation of the accounts and business of a party or of transac-
tions not material to the issues or with a view to finding evidence
to be used in other suits or prosecutions.

3. SAME—*what may be included in an order for production of
books.* An order for the production of books of account, under
section 9 of the Evidence act, should limit the examination to such
matters as are pertinent to the issue, and to that end it may pro-
vide that memoranda may be taken from the books concerning mat-
ters material to the case, and it may permit such inspection at the
office of the defendant, and the examination may be either before
or during the trial.

4. SAME—*validity of order for production of evidence may be
tested in contempt proceeding—appeal.* A party compelled to pro-
duce books and documents for examination may contest the valid-
ity of the order by refusing to obey it and in a prosecution for
contempt may show in defense that the court had no authority to
make the order; and where the construction of a constitutional
provision is involved an appeal lies directly to the Supreme Court.

5. SAME—*cause for compulsory examination of books may be
shown by pleading or affidavit.* The materiality of the evidence
and the good and sufficient cause required to be shown to compel
the examination of books and documents may appear from the
pleading or may be shown by the affidavit filed in support of the
motion for the order.

6. ADMINISTRATION—*when order to compel claimants against
an estate to produce account books is too general—contempt.* An
order to compel claimants against an estate to permit an examina-

tion of books of account is too general in its scope where it author-
izes an inspection not only of the account with the deceased but an
inspection of all accounts with all customers dealing in certain
stock, where the affidavit of the executrix for such an order does
not show good and sufficient cause for such general inspection but
is based on information and belief that such examination would
disclose facts material to the validity of the claim; and the claim-
ants are not liable for contempt in refusing to obey such order.

APPEAL from the Probate Court of Cook county; the
Hon. HENRY HORNER, Judge, presiding.

SIMS, WELCH, GODMAN & STRANSKY, (ALBERT G.
WELCH, and JAMES L. COLEMAN, of counsel,) for appel-
lants.

WILLIAM J. LACEY, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Willis J. Ensminger died testate in Cook county Decem-
ber 16, 1924, and his widow, Minnie L. Ensminger, was
appointed executrix under his will. Appellants, George A.
Carden, George W. F. Green, Allen B. Kendrick, Howland
H. Pell and Edward T. White, who were formerly co-
partners doing business as Carden, Green & Co., filed a
claim in the probate court of Cook county against the estate
for $52,137.37, being the balance of principal and interest
alleged to be due for money expended by appellants for the
benefit of the testator from November 6, 1922, to August
31, 1925, in the purchase and sales of certain stocks and
securities. On March 5, 1926, after the claim was filed, the
executrix made a motion under section 9 of chapter 51 of
the statute, supported by an affidavit, for an inspection of
the books and records of appellants. The affidavit alleged
that the claim arose out of the transactions between the tes-
tator and appellants through certain dealings while appel-
lants were doing a brokerage business in New York, buying

and selling stocks; that as executrix she had no books kept by the testator and had no knowledge of these transactions except as the same were furnished and claimed by appellants; that there were certain stocks and bonds put up by the testator as collateral security on margins for the purchase of stock known as Rova radio stock. The affidavit alleged on information and belief that most of the claim arose out of transactions pertaining to the buying and selling of stock of this company; that money was put up and paid by the testator for some of the stock; that some payments were made on margins for future delivery and that certain of the transactions were gambling transactions and were void. She also alleged on information and belief that appellants owned a large part of the stock of the Rova Radio Company, were sponsors for its sale and were familiar with its assets and liabilities; that they boomed and falsely boosted it on the market through illegitimate sales, made for the purpose of raising the market price; that the stock did not represent the value that was claimed for it; that appellants knowingly and falsely represented certain facts pertaining to the stock in order to get the testator to buy the same; that the testator acted upon such false representations and purchased a certain amount of the stock, and appellants are now trying to enforce a claim therefor against his estate. She alleged that she requested of appellants an inspection of the books, papers and records of the transactions of appellants in connection with the various sales of stock of said company and they refused such request; that the only records of the total amount due are in possession of appellants, and that affiant has no other source from which to obtain facts or evidence to establish the total amount of indebtedness, if any; that the books and papers which will disclose the sales of said stock, the manner in which such sales were made and the part which appellants took in boosting and booming the stock are the ledgers, journals, cash books and other books of appellants; that it is

necessary that such books and records be examined by the agents and attorneys for the executrix in order that she may properly prepare for trial.

In opposition to this motion appellants filed the affidavit of George W. F. Green, in which it was alleged that about November, 1922, the testator opened an account with appellants for the purchase of stocks and securities on margins; that from time to time the testator withdrew stocks and securities from the account, drew drafts on appellants which were debited against him, and deposited additional margins when the balance of the account was insufficient; that the accounts were kept in the ledgers of appellants; that when an order for the purchase or sale of stock was given by the testator, upon its execution a notice confirming such purchase or sale was mailed to him, and that appellants have in their office files a number of communications from the testator relative to the transactions; that in·addition to notice of confirmation it was the custom of appellants at the end of each month to prepare from the ledgers and mail to the testator a statement containing all of the details which had been previously forwarded to him in the notices of confirmation; that said statements showed the debit balance against the testator and the stocks and securities held in his account; that with each monthly statement there was mailed a slip for the testator to sign; that appellants have among their records a signed acknowledgment from the testator of the receipt and correctness of the statement covering each month up to his death, with the exception of September, 1924; that on January 6, 1925, after the death of the testator, appellants wrote to his son, in which letter they stated that they had prepared a complete statement of account, which showed the prices paid for all stock, with all interest charges; that if there was any additional information needed appellants would be glad to furnish it; that appellants sent a statement of the account to the executrix and to her son up to January 31, 1925, and received a writ-

ten acknowledgment from them stating that they found the account correct; that on February 28, 1925, another statement of account was forwarded to the executrix and she acknowledged the same. The affidavit further alleged that at the time of the testator's death certain speculative securities were held in the account, including shares of stock of the Rova Radio Company; that in March, 1925, an attorney for the executrix, with her son, called at the office of appellants and they exhibited to him a statement showing the substance of the account, and the attorney was given a copy of the same; that later a Mr. Reed, who purported to represent the executrix, called at the office of appellants and they urged that the executrix give an order for the sale of 4000 shares of stock of the Rova Radio Company, which was then selling at four dollars per share, but the advice was not followed and the stock declined to a nominal figure. The affidavit denied that the transactions were gambling transactions and void, but alleged that every transaction was an actual and lawful transaction and conducted in strict accord with the rules and regulations of the stock exchange or the curb, as the case might be. It denied that appellants owned any stock of the Rova Radio Company; alleged that appellants on one occasion participated in the underwriting of the sale of a certain number of shares of the stock and many of their customers dealt in the stock, but except as aforesaid they had no financial interest in the stock or the affairs of the company; that it was untrue that appellants ever had anything to do with booming or falsely boosting the stock or that they made illegitimate sales for the purpose of raising the market price; that it was not true that appellants made any representations to the testator regarding the stock to induce him to buy the same, and that these allegations had no basis in fact and were merely incorporated in the affidavit to prejudice the court; that the ledgers of the firm contained the same entries which were transcribed in the statement of account, and the executrix

should be compelled to state which particular entries in these many statements of account she desired to have verified or further authenticated; that appellants had at the time of the testator's death from 1000 to 1500 accounts for customers other than the testator; that the court should not permit an omnibus inspection of the books and records, which contained not only entries and references to transactions with the testator but also showed the private business transactions of other customers which were highly confidential; that appellants had no objection to collecting and exhibiting, under proper safeguards, particular entries relative to transactions in the account of the testator, but the exhibition to the attorneys of the books and records generally would not only entail an enormous and useless labor but would violate the confidential relations of other customers of the firm.

The court entered an order requiring appellants to produce certain records. The order, after reciting that the affidavit of the executrix and the affidavit and answer of the appellants were all the evidence heard or considered, found that it was necessary to have an inspection of the books pertaining to the transactions. Appellants were ordered to produce their books and records pertaining (1) to the transactions between the testator in his lifetime and appellants; (2) also pertaining to all purchases and sales of the Rova Radio Company stock to or by the testator during his lifetime; (3) also pertaining to all purchases and sales of the Rova Radio Company stock made by appellants; (4) also as to whether or not appellants became and were the owners of any of the capital stock of the Rova Radio Company prior to the sales of stock of the company to the testator; (5) also pertaining to the aid, assistance and activities of appellants in the sales of all the stock of the Rova Radio Company. They were ordered to have said records in some convenient place in the city of New York so that the agents and attorneys of the executrix might, within thirty

days from the entry of the order and within reasonable
hours of the day, inspect and examine the books and make
such entries and memoranda from the books as they might
deem necessary to be used in the trial of the cause. Appel-
lants, within five days from the date of the order, were
to give notice to the executrix when the records would be
ready for inspection and the place where the same could
be seen and inspected.

After the entry of the order appellants wrote a letter to
the executrix, in which, after stating the substance of the
order, they told her that they were willing to permit an in-
spection of all books and records pertaining to the transac-
tions between the testator and appellants, but that "we re-
spectfully decline to permit any inspection of our records
pertaining to purchases and sales of the Rova Radio Com-
pany capital stock made by Carden, Green & Co. for them-
selves or customers except the said Willis J. Ensminger,
or pertaining to any of the other matters or things referred
to in said order." On June 9, 1926, the court, upon mo-
tion of the executrix, entered a rule against appellants to
show cause why they should not be punished for contempt
of court for failure to obey the order. Appellants filed
their answer to the petition, in which they alleged that they
had by a letter to the executrix offered to furnish all evi-
dence relative to the transactions between the testator and
themselves but declined to permit any inspection pertaining
to other purchases of the Rova Radio Company stock; that
neither the executrix nor her attorney had at any time since
the entry of the order made use of the permission to inspect
the books relative to the transactions; that so much of the
order as required appellants to submit their records with
reference to all sales of stock of the Rova Radio Company
constituted an unreasonable search and seizure of the rec-
ords of appellants, and that the order was in violation of
section 6 of article 2 of the State constitution and the four-
teenth amendment to the Federal constitution. There was

a hearing upon the motion on the attachment, the court found that appellants had violated the order and held them guilty of contempt, a fine of $50 was imposed on each appellant, and each was ordered to stand committed until the fines and costs were paid. From that judgment an appeal has been prosecuted to this court.

The sole question is whether or not the order as entered was in violation of the constitutional rights of appellants and whether they were justified in refusing to comply with the same.

Section 9 of chapter 51 of our statutes provides that "the several courts shall have power, in any action pending before them, upon motion, and good and sufficient cause shown,' and reasonable notice thereof given, to require the parties, or either of them, to produce books or writings in their possession or power which contain evidence pertinent to the issue." The construction of this section has been before this court on many occasions, and it has been uniformly held that before an order can be entered there must be good and sufficient cause shown upon reasonable notice, and that the evidence sought to be obtained must be pertinent to the issues in the case. (*First Nat. Bank* v. *Mansfield*, 48 Ill. 494.) The statute contemplates the production of evidence which the party applying therefor is entitled to introduce and which the other party withholds. The court has power to compel the production of the books of a party to be used as evidence on the trial upon proper showing that they contain entries tending to prove the issues, but the statute can not be construed as giving the court power and authority to take the books and papers of the party and impound them with an officer of the court for examination and inspection, or give the right to compel the submission of the books to a general inspection and examination for fishing purposes or with a view to finding evidence to be used in other suits or prosecutions. (*Lester* v. *People,* 150 Ill. 408.) Such an order cannot be used to procure a general investigation

of the accounts and business of a party or of transactions not material to the issue. (*Walter Cabinet Co.* v. *Russell,* 250 Ill. 416.) An order which limits the examination to such matters as are pertinent to the issue does not infringe the constitutional guaranty against unreasonable search and seizure. (*Swedish-American Telephone Co.* v. *Fidelity and Casualty Co.* 208 Ill. 562.) The order may provide that memoranda may be taken from the books concerning the matters material in the case. (*Denison Cotton Mill Co.* v. *Schermerhorn,* 257 Ill. 128.) Such an order is not erroneous because it permits such inspection at the office of the defendant and not in the presence of the court. The language of the statute does not limit the time when the books and writings are to be produced, to the time of the trial, but the examination may be either before or during the trial. (*Swedish-American Telephone Co.* v. *Fidelity and Casualty Co. supra.*) If the party against whom the order is made wishes to contest the validity of the order he may refuse to obey and in a prosecution for contempt show in defense that the court had no authority to make the order. Where the construction of a constitutional provision is involved in such an order an appeal lies directly to this court. *Lester* v. *People, supra; Denison Cotton Mill Co.* v. *Schermerhorn, supra.*

No complaint is made of that part of the order which requires appellants to submit to an inspection of their records relative to all transactions between the testator and appellants but objection is made to all the rest of the order. The statute provides that the order may be made upon good and sufficient cause shown. This is one of the material and essential provisions of the statute and it must be complied with before a valid order can be made. The materiality of the evidence and the good and sufficient cause may appear from the pleading or they may be shown by the affidavit filed in support of the motion. (*Denison Cotton Mill Co.* v. *Schermerhorn, supra.*) There were no pleadings in

this case except the claim which was filed. No issues were joined upon the claim, therefore the materiality of the evidence did not appear from the pleadings. It was therefore necessary that the good and sufficient cause and the materiality of the evidence should appear from the affidavit of the executrix. Many of the essential allegations of her affidavit are alleged only upon information and belief. In fact, all of the allegations of fraud with reference to the radio stock are based upon information and belief. This is the only part of the order to which objections are made. It is alleged on information and belief that most of the claim arose out of the buying and selling of radio stock; that portions of the transactions were payments made on margins and were gambling transactions; that appellants owned a large part of the stock of that company; that appellants sponsored the stock, circularized the sales and were familiar with the assets and liabilities of the company; that the stock was boomed and falsely boosted through illegitimate sales, made for the sole purpose of raising its market price; that appellants knew that the price did not represent the value they claimed for it; that the Rova Radio Company had no assets that would warrant the booming of the stock by illegitimate sales; that appellants knowingly and fraudulently represented certain facts to the testator to induce him to buy. All of these allegations are not only based merely on information and belief, but the affidavit does not even state the facts upon which the belief is based. It merely states the conclusions of the affiant. It fails to allege what facts appellants knowingly and fraudulently represented to the testator in order to induce him to buy. It fails to allege how or in what manner any information in the books or documents would be pertinent or material to the issue. It does not specify any particular book or document needed but asks for an inspection of all documents, books and papers, without limitation. On the other hand, the affidavit filed by appellants denies in positive terms

every allegation of fraud charged by the executrix. No part of it was on information and belief. No evidence was heard by the court but the hearing was on affidavits alone. The persons making the two affidavits were apparently of equal credibility, and yet the contradicted affidavit of the executrix was held to show such good and sufficient cause as justified the order. This affidavit did not show good and sufficient cause and did not show the materiality of the evidence when it is considered in connection with the affidavit filed by appellants and when the sweeping character of the order entered is considered.

The order required appellants to submit for inspection all of their books, journals, ledgers, cash books, invoices, circulars, letters, memoranda, records and files pertaining to the buying and selling of Rova stock, made by appellants; also all of said documents pertaining to the question whether or not appellants owned any of the stock of said company prior to the sales to the testator; also all of said documents pertaining to the aid, assistance and activities of appellants in the sales of all of the stock of said company. This order specified no particular period of time which the inspection was to cover. It could have covered any time from the formation of the partnership by appellants to the death of the testator. It made no limitation as to the accounts to be investigated, provided they were Rova accounts. The inspection could have covered any and all accounts, regardless of whom they were with, when they took place or for whatever purpose they were made. The order threw open all of the records of appellants with reference to these matters without limitation of any kind. No safeguards were thrown around the inspection for the protection of appellants against an investigation not covered by the order. It left to the discretion of the attorneys for the executrix to determine what they would or would not inspect and what was or was not material to the issue. The order in this respect was an invasion of the constitutional rights of ap-

pellants and they were under no obligations to obey the part of it above indicated.

The judgment finding appellants guilty of contempt of court will be reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded.*