(No. 25477.—

WILLIAM OETTING, Appellee, *vs.* LILLIAN GRAHAM *et al.* Appellants.

*Opinion filed February 21, 1940.*

Otto Kerner, Jr., and Gerald C. Snyder, for appellants.

Runyard & Behanna, (Eugene M. Runyard, and Fred B. Meyer, of counsel,) for appellee.

Mr. Chief Justice Wilson delivered the opinion of the court:

May 15, 1936, the plaintiff, William Oetting, filed a complaint against Lillian and Richie V. Graham in the circuit court of Lake county to enjoin them from obstructing a highway and seeking a decree that he had a right-of-way over this particular strip of land. A temporary injunction issued against these two defendants the same day. July 9, 1937, plaintiff amended his complaint by adding Helen Kerner as a party defendant. When the complaint was filed plaintiff was the owner of and interested in lots 5 and 6 in Sylvan Woods subdivision and some acreage property, sometimes referred to as parcel 1, north and east of the subdivision. The defendants, Lillian and Richie Graham, owned lots 3 and 4 and the defendant, Helen Kerner, owned a life estate in lot 1 (except the west 100 feet thereof) and lots 2, B and C. Mrs. Kerner and Mrs. Graham, together with their sister, Ella Jirka, owned in joint tenancy all of that part of lot A lying west of a line running parallel with and 290 feet west of the east line of lot A. By his complaint plaintiff charged that none of his property or the subdivision was located upon a public highway and that on December 30, 1890, Warren Williams and his two brothers, the then owners, caused the subdivision to be surveyed and subdivided. Specifically, it is charged that by the plat of this subdivision, recorded on December 31, 1890, the subdividers laid out and dedicated a strip of land 50 feet in width, extending from the northwesterly corner of the subdivision, connecting with plaintiff's acreage property, described as parcel 1, and extending across in a southeasterly

direction to the easterly bounds of the subdivision and, thence, in a southeasterly and easterly direction to a public highway then and now located about one-half mile east of the subdivision. A clearer understanding of the situation presented by the pleadings may be obtained from a drawing of part of the original plat, which plat was admitted in evidence as plaintiff's exhibit 1:

It affirmatively appears from the complaint that plaintiff alleged the plat of the subdivision dedicated lot C, as well as Park street, as and for a public highway. An examination of the plat discloses, however, that the dedicated public highway did not include lot C. Moreover, the plat shows that lots B and 1, as well as lot C, extend west of the dedicated Park street. Plaintiff·alleged that the defendants had threatened to build a fence across the highway or cause it to be obstructed and closed at a point or points northerly of lots 1, 2, 3 and 4 and adjacent thereto, and along and across the road or highway abutting thereon and so as to

completely prevent the use and enjoyment of the highway by plaintiff's property and access to and from his three parcels. Answering the original complaint, the defendants, Lillian and Richie V. Graham, denied a plat dedication and, also, any threats to obstruct the highway. These defendants likewise denied the allegations contained in the amendment to the complaint, adding that a fence was built upon the portion of the property owned by their co-defendant, Helen Kerner. Mrs. Kerner answered the complaint and the amendment thereto, admitting that she had placed a fence upon her own property across a road or path which had been used with the permission of the owner for a period of eight years, and that the placing of the fence upon her property was her own act and not that of the co-defendants, and, further, that she and her predecessors in title have allowed the user, by permission only, of a portion of her property for eight years, and denied that the plaintiff or any other person had any right, title, easement or interest in the property owned by her.

The special master in chancery, to whom the cause was referred, heard considerable testimony. A review of the testimony is not, however, necessary to the present inquiry. The master found that by the plat of the Sylvan Woods subdivision, the subdividers dedicated a strip of land 50 feet in width, extending from the easterly line of lot C to the east line of the subdivision terminating in a north and south street, marked on the plat as Lake street, this last named street being reserved for the use of the owners in the subdivision only; that this public highway, 50 feet in width, designated as Park street, extended from a point at the southeasterly end of lot C in a southeasterly direction to Lake street, a private street bounded on the east by the easterly line of the subdivision. The master thus found that the dedicated street did not include lot C. He further found that there is a woven wire fence with steel posts set in concrete extending from the northeast corner of lot 4

opposite lots 2, 3 and 4 in Park street; that opposite lot 2 there are two brick posts with connecting gates; that the gate has never been closed; that the woven wire fence opposite lots 3 and 4 is maintained as the north boundary of the property owned by the defendants, Lillian and Richie V. Graham, and is so maintained as a trespass on Park street in so far as the rights of the other lot owners in the subdivision are concerned, and that the woven wire fence, brick posts, south closed gate, open gate and the woven wire fence from the last mentioned gate to the east line of lot C are maintained as a trespass on Park street by the defendant Helen Kerner. The master further found that although the defendants had never made any written or oral threats to construct gates either in Park street or in the way from the east line of lot C to McGinty's gate, the entrance to plaintiff's acreage property at the south end, a perpetual injunction should, nevertheless, be granted against the building of gates in Park street. At the time of the recording of the plat of the subdivision, the master's report continues, the Williams brothers, while still the owners of the whole subdivision, constructed a road connecting with its entire length at McGinty's gate with the highway extending easterly and thence southeasterly from the east line of the subdivision, the course of the road being southerly from McGinty's gate over portions of lots B and C, and, thence, over Park street to a point where the traveled road leaves Park street and crosses lot A and follows a public road, joining a public road having a course easterly from the subdivision, and, thence, southeasterly, and that the location of the road as now located is correctly shown by plaintiff's exhibit 2. This exhibit, a plat dated June 4, 1937, shows a road denominated "present driveway," extending from the westerly end of Park street over a portion of the east 150 feet of lot C and then north over lot B to the north boundary of the subdivision. The master found as an ultimate fact that a private and public road within the

meaning of section 98 of "An act to revise the law in relation to roads and bridges" (Ill. Rev. Stat. 1939, chap. 121, par. 105, p. 2762) exists, having a traveled width of 12 to 16 feet from the east line of lot C to McGinty's gate, and that the center of this way is between 15 to 20 feet from the woven wire fence located adjacent to the south line of the way over lots B and C, and that while none of the defendants have made any oral threats respecting any obstruction of the way they had and were maintaining an obstruction in Park street and, in consequence, an intention to obstruct the highway from the east line of lot C to the McGinty gate is presumed. Accordingly, the master recommended that a permanent injunction issue as to the use of the way for a public and private road within the meaning of the statute, located and described over portions of lots B and C.

May 27, 1939, plaintiff asked leave to file an amended and supplemental complaint alleging that the original subdividers, while they were still the legal owners of the subdivided property, filed and recorded the plat heretofore mentioned, dedicating to the general public for all public uses and purposes a strip of land 50 feet in width and lying 25 feet on each side of a line described in detail, over parts of lots C and B, extending from the northwesterly corner of lots C and B to the north line of the subdivision several hundred feet east of the most northwesterly point of the subdivision. The relief asked was an order restraining defendants from obstructing the highway last described, and declaring and adjudging this strip of land a public highway. In short, the proposed amended and supplemental complaint alleged a common law dedication over part of lots C and B, whereas the original complaint charged a statutory dedication of all of lot C and Park street. The defendants filed numerous written objections to the filing of the amended and supplemental complaint, among others, that proof had

been taken upon a different cause of action, upon different issues and pleadings,—not upon the new charge made in the amended and supplemental complaint,—namely, a common law dedication, and that to permit the filing of this pleading and to enter a decree upon the evidence heard on the original complaint would deprive them of due process of law and deny them the equal protection of the law in violation of section 2 of article 2 of our constitution and section 1 of the fourteenth amendment to the Federal constitution. Their objections were overruled and the plaintiff was permitted to file his amended supplemental complaint *instanter* on June 24, 1939. Defendants then filed motions requesting a reasonable time to plead or answer the amended or supplemental complaint. These motions were denied and defendants were ordered to answer *instanter*. June 26, 1939, defendants moved to strike the amended and supplemental complaint, charging that the property alleged in the original complaint to have been dedicated by the plat is a strip of land 50 feet in width, extending from the northwesterly corner of the said subdivision and connecting with plaintiff's acreage property, described as parcel 1; that the premises described in the amended and supplemental complaint are not the same premises described in the original complaint and that, in particular, the premises described in the amended and supplemental complaint do not extend from the northwesterly corner of the lands subdivided as parcel 1, but, on the contrary, the premises described in the tendered complaint extend from the northwesterly corner of lot 2 across parts of lots C and B to the north line of the subdivision several hundred feet east of the most northwesterly point of the subdivision. These motions were denied. Defendants were then permitted to interpose their answers denying that plaintiff was entitled to the relief sought by his amended and supplemental complaint. They next presented their oral motions to rerefer the cause to the

master to hear additional proofs, the nature of which was described in detail. Plaintiff's objection was sustained and the defendants' motions were denied. On same day, June 27, 1939, a decree was entered in conformity with the master's report, granting plaintiff the relief sought by his amended and supplemental complaint. Defendants appeal directly to this court, a freehold being involved.

Only one of the contentions urged in support of a reversal requires consideration. Defendants contend that the chancellor erred in allowing the filing of the amended and supplemental complaint stating a new cause of action, overruling their motions to rerefer the cause to the master, and entering a decree conformably to the allegations of the second complaint under proofs offered under the first complaint. Recourse to plaintiff's original complaint discloses that his cause of action was initially predicated upon a plat dedication of Park street and of lot C. From the plat of the subdivision it appeared that no part of lot C was dedicated, and the master so found. According to the master's report the evidence adduced disclosed a common law dedication over parts of lot C and B. Thereafter, the plaintiff sought and obtained permission to file a new complaint alleging a different cause of action from the one charged in his original complaint and covering different premises. Defendants, as previously recounted, repeatedly resisted the filing of the amended and supplemental complaint and, after it was filed, by appropriate motions, unsuccessfully moved to strike the pleading and, finally, sought in vain to have the cause rereferred to the master, with directions to receive additional testimony. These last motions were denied despite the fact that the chancellor, in a written opinion, stated that the proofs did not in any manner support plaintiff's allegation of a plat dedication over lot C and Park street, observing, "an examination of said plat discloses that so far as the plat is concerned no land west of the east line of

lot C was designated or dedicated as and for a highway." Admittedly, the allegations and the proof in this case do not correspond. It is elemental that where a plaintiff fails to prove the cause of action made by his complaint he is not entitled to recover, although the facts actually proved would have entitled him to relief had his bill been framed upon a different theory. Manifestly, the defendants here have the right to contest the case on which complainant eventually claimed and won relief. (*Adams* v. *Gill,* 158 Ill. 190; *Angelo* v. *Angelo,* 146 id. 629; *Kellogg* v. *Moore,* 97 id. 282; *McKay* v. *Bissett,* 5 Gilm. 499.) As was pertinently observed in *Angelo* v. *Angelo, supra,* "The rule that proofs without corresponding allegations are in equity as unavailing as allegations without proofs, is familiar to every lawyer." Application of these cardinal principles affords the defendants the privilege of attempting to defeat the new cause of action stated by plaintiff's amended and supplemental complaint. This opinion must not be construed, however, as indicating that the additional proof which defendants may offer is sufficient to establish their defense. It is sufficient to observe that they are entitled to an opportunity to be heard and to defend the new cause of action. We are of the opinion that the basic guaranties of due process of law demand, and that the ends of justice will be best conserved, by permitting the defendants, upon a rereference of the cause to the master in chancery, to present additional testimony upon the issues made by the amended and supplemental complaint and the answers thereto.

The decree of the circuit court is reversed and the cause is remanded, with directions to proceed in conformity with the views herein expressed.

*Reversed and remanded, with directions.*