Hawley Products Company, Appellant, v. George S. May, Trading as George S. May Company and George S. May, Inc., Appellees.

Gen. No. 9,755.

538

February term, 1942. ▮▮▮▮▮▮▮▮▮▮  Heard in this court at the
Opinion filed May 14, 1942.

SEARS, O'BRIEN & STREIT, of Aurora, for appellant; BARNABAS F. SEARS and EDWARD F. STREIT, both of Aurora, of counsel.

McFARLAND, MORGAN & STEARNS, of Chicago, and CHARLES G. SEIDEL, of Elgin, for appellees; G. A. BURESH, of Chicago, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Kane county purging appellees of contempt and discharging the rule to show cause, under a prior order to produce, for inspection and to be copied or photographed by appellant, a certain written lease existing between appellees. The cause was transferred by the Supreme Court to this court because no constitutional question is involved, *Hawley Products Co. v. May,* 377 Ill. 506.

We consider first a motion by appellees to dismiss the appeal on the ground that the judgment is not a final, appealable order. In *People v. Diedrich,* 141 Ill. 665, the judgment of the circuit court adjudging the defendant guilty of contempt had been reversed by the Appellate Court and the cause remanded with directions to discharge the rule. In *Hill v. Thomas B. Jeffery Co.,* 292 Ill. 490, the same kind of a judgment was reversed by the Appellate Court without a remanding order. The Supreme Court entertained an appeal from the Appellate Court in each case. Appellees here urge that the judgment of the trial court in each case was final, and that a judgment of

the Appellate Court reversing a final judgment without remanding the cause is also a final judgment, and that for these reasons the Supreme Court took jurisdiction. The hypothesis is not applicable to the *Diedrich* case, where there was a remanding order. We observe no reason why a judgment of the Appellate Court remanding the cause with directions to discharge the rule is any more a final, appealable order than a judgment of the trial court discharging the rule in the first instance. In *Hill v. Thomas B. Jeffery Co., supra,* the court points out that a proceeding to show cause is an ancillary proceeding, brought to enforce an interlocutory order, and while its purpose is connected with and has its foundation in the main case, it is a separate case prosecuted independently to enforce compliance with the order of the court. It was held that "a judgment either that he was guilty or that he was not is a final judgment." Appellees' contention that the quoted words apply only to the judgment of the Appellate Court is refuted by the antecedent expressions of the opinion, which demonstrate the court was referring to the judgment of the trial court. *Lester v. Berkowitz,* 125 Ill. 307, where it was held that the preliminary order to produce is interlocutory and not appealable is not in point. From a subsequent contempt order in the same case the court entertained an appeal. (*Lester v. People,* 150 Ill. 408.) Nothing said in any of those cases lends any support to the claim of appellees that it is only the imposition of an imprisonment or the assessment of a fine, and not the finding of guilty or not guilty, that gives the right of review. The motion to dismiss the appeal is denied.

The record discloses that appellant, a manufacturing corporation, sued George S. May, doing business as George S. May Company, and George S. May, Inc., a corporation, in an action to recover damages for an alleged breach of contract. The complaint alleges

the defendants held themselves out to the public and to appellant as industrial engineers and efficiency experts; that relying thereon, appellant, on or about May 15, 1937, employed both defendants to furnish services in its business to effectuate savings and increase profits; and that the work was negligently, carelessly and unskillfully performed and brought about large losses.

The defendant corporation answered, denying holding itself out as alleged in the complaint, and denying it ever had any business dealings with or rendered any services to appellant. The answer of the individual defendant alleges the contract was made and the services were performed by him only, doing business as George S. May Company. It denies any breach of the contract or injury to appellant, and alleges an account stated and an accord and satisfaction. Subsequently both defendants filed amended answers under oath denying joint liability. For convenience George S. May, Inc., and George S. May, doing business as George S. May Company, will be called respectively the corporation and the Company.

By agreement of the parties George S. May was examined by appellant before a notary public as commissioner. He testified he operates the George S. May Company; that the business is international with a home office in the Chicago building owned by the corporation, and twenty other offices, including a downtown office in Chicago, leased from other parties that from February 1, 1925 to November 14, 1929, he operated the business as an individual; that on the latter date George S. May, Inc., was incorporated; that he is president and holds 99 per cent of the stock, the other stockholders being his wife and some forty-five of his employees; that upon its organization the corporation acquired the property and equipment and operated the business until February 1, 1934, when it went out of business and has ever since leased the

property and equipment for a rental sum to the Company; that the corporation does nothing except collect the rent; that the business of the Company is solicited, contracted and performed in the name of the Company and by his men, and not by the corporation; that checks for the work are turned in to the Company; that accounts receivable are not and never have been assigned to the corporation; that appellant's job was solicited by one of his employees, the work was done by other employees and the money received was deposited in the name of the Company, and none of it went to the corporation; that the latter has no record of the job, but the Company has such a record in its job-file and bookkeeping records; that the corporation and the Company have a written agreement with reference to the relations existing between them, in the nature of a lease, the first one being dated February 1, 1934, a new one having been drawn later with minor changes; he refused to answer questions as to how much rent the corporation collects in the course of a year; the average annual earnings of the Company; whether the payment received by the corporation is a percentage or a definite, stated amount; the consideration for the transfer; whether there was any consideration except stock in the corporation; whether any percentage of the money from appellant's job ultimately came to the corporation; and whether the lease provides for paying a percentage of the profits for the leasing.

The report of this testimony was filed in court, whereupon appellant filed motions to require George S. May to answer the questions he refused to answer, and for the production of the lease for inspection and to be copied or photographed by appellant. The motions were supported by affidavit of appellant's counsel that the lease was relevant to the issues, inasmuch as it was claimed by the defendants to set forth the business relationship between them. Ap-

pellees filed verified answers setting out the issues made by the pleadings as to the contract between appellant and the Company, the payments thereunder to the Company, and alleging the production of the lease would not show how much or to whom the money was paid; that it was not shown the lease was in any way material, pertinent or relevant; and that an order to produce it would violate their constitutional rights. A copy of the contract and of a settlement during performance were attached as exhibits to the answer of George S. May.

Appellant then filed an affidavit and two amended affidavits by one of its counsel, alleging, on information and belief, that the production of the lease and further questioning of George S. May, if permitted, would establish that the corporation has an interest in the profits and operation of the Company; that, except for a bonus or commission to the Company, the corporation receives all the profits of the Company; that the corporation owns all the property, equipment and furnishings used in the business of the Company and does all the financing for the operation of the business; that the officers and directors of the corporation are the same persons as the supervising executives of the Company; that the source of his information is a confidential report of a named reporting agency, containing information furnished by the Company, the corporation and its officers, and an investigation by the affiant, disclosing that all accounts of the Company are assigned to the corporation, which receives a percentage commission on all new orders of the Company; that George S. May, when previously examined testified that the lease sets forth the relation between the parties; that its production and the further examination of May will produce evidence tending to establish either that the Company is an agent of the corporation and that both the corporation and the Company are in fact operating the busi-

ness, or that the method of operation is merely a subterfuge to place all assets of the Company beyond the reach of creditors, and that there is in fact no separate corporate entity.

The court entered an order in compliance with the motions. George S. May again testified before the commissioner. He refused to produce the lease, or to testify as to whether the rent was a percentage of the profits, and whether all the profits except a commission to him goes to the corporation. He testified the corporation never discounts notes and never has, but refused to answer whether it had been a party to a deal where its endorsement was required on discounted notes, and whether any such notes bore the endorsement of both the Company and the corporation; and whether when such notes are discounted the money goes to the credit of the corporation; whether the witness receives a commission on new business done by him as the Company; whether the rent is $3,300 per month, plus all the profits of the Company after deducting 4 per cent of the total billings; whether the good will of the corporation redounded to his benefit; whether he notified customers the method of operations had been changed; whether the rent increases or decreases with corresponding increase or decrease of the Company's business; whether the corporation has a direct financial interest in the volume of the Company's business; whether, when new orders come in, the corporation immediately receives any kind of bonus or commission; whether the corporation has qualified to do business in other States; whether it was so qualified when engaged in business, and whether the lease provides for the rental of the building where the home office is located.

He testified the only interest the corporation has in the Company is to collect rent; that the accounts receivable are not and never have been assigned to the corporation; that it has no interest in the accounts,

and money received from customers comes into the corporation's hands only as it is paid in rent; that when the corporation was organized he paid in about $93,000 in assets of the business, and about $7,000 in cash to make up the remainder of the stock; that the consideration therefor was the issue of the stock; that when and after he commenced operating the business in 1934 the employees were his, and not those of the corporation; that the only assets of the business he owns are those daily consumed, such as gasoline used in the cars of the corporation; that the offices previously used by the corporation are used by the Company; that all branch offices are leased by and in the name of the Company. At the close of his testimony appellees' counsel stated the witness was prepared to correct his testimony as to his stockholdings.

After the return into court of the last report of the commissioner, appellant filed a petition to require appellees to show cause why they should not be punished for contempt because of the failure to produce the lease. Appellees filed a joint and several answer denying any contumacy or disrespect for the court, and alleging they are advised by their counsel that the lease and its contents are not material to the issues, and that the order for its production is in violation of their constitutional rights. It calls attention to the issues made by the pleadings, and that they do not embrace any question of principal and agent, employer and employee or master and servant; that the complaint alleges a contract with both defendants, and that therefore no issue arises as to the relationship between the defendants themselves. It sets out the testimony of George S. May, and the questions he refused to answer, and that the ground of refusal was that the information attempted to be elicited is not material to the issues, and was an attempt to pry into the private affairs of the defendants, contrary to their constitu-

tional rights; that it is not shown by any pleading or document or any fact set forth therein that the lease is material, pertinent or relevant to the issues; and that it is not so material, pertinent or relevant. It alleges that the only interest of the corporation in the lease is the same as that of any other landlord; that the only time it would receive an amount equal to the profits of the Company would be when the profits would not exceed the amount provided in the lease to be paid as rent; that the corporation owns only such property and equipment used by the Company as is described in the lease; that the corporation does none of the financing of the Company, and the lease does not provide that it shall do so; that the officers of the corporation are not all the same persons as the supervisory executives of the Company; and the lease does not provide they shall be the same; that the lease was never shown to the reporting Company mentioned, or to any of its officers, agents or representatives; that the supposed facts alleged in the petition were not furnished to the reporting agency or any of its officers, agents, or representatives, by the defendants or either of them, or by anyone authorized by them; that none of the accounts receivable are or ever have been assigned to the corporation; that the corporation does not and never has received a percentage commission or any commission upon new orders of the Company, and the lease does not provide for any such percentage; that at the time of the examination of George S. May he did not own 99 per cent of the stock in the corporation, but of the three classes outstanding, his wife owned 950 of 1000 shares preferred, the other 50 shares being owned by employees and others; that of the Class A common stock, George S. May owned 78 shares, his wife 64 shares, and employees and others 385 shares; that of the Class B common stock, George S. May owned 4000 shares, and his wife 2000 shares. It recites the effort to correct the testimony in this respect, and alleges

the lease does not show the stock holdings; that the lease provides for the payment of rent, with the usual provisions for care, repairs, insurance and water rates; that it does not provide any relationship as principal and agent, employer and employee or master and servant, and the complaint of appellant makes no allegation that it so provides; that the allegation that the method of doing business is a subterfuge for the purpose of placing the assets of the Company beyond the reach of creditors indicates the purpose, not to prove the issues, but as a fishing expedition with a view of finding evidence to be used in other suits, in violation of the constitutional rights of the defendants; that the allegation that there is in fact no separate corporate entity is in effect an allegation that the averment of corporate existence in the complaint is false; that both defendants are not and never have been operating the business, but the Company alone operates it; that the production of the lease would not tend to show that both defendants are operating it, and the lease does not so provide, or that both defendants are guilty of the alleged wrongful acts, or that both or either is liable, and there is no provision in the lease for joint liability; that the contract was made with the Company alone, all checks in payment thereon were made to the Company and are in possession of appellant, so showing. The answer is positively verified by the affidavits of George S. May and by the treasurer of the corporation. As was pointed out in *Carden v. Ensminger,* 329 Ill. 612, it is to be noticed that the affidavits of appellant's counsel in support of the petition are on information and belief only.

The parties agree that in a criminal contempt a defendant may be discharged upon his sworn answer, and that this is a civil and not a criminal contempt. Appellant claims that the trial court discharged the rule upon the answer, and that this was error, because, in order to purge themselves of contempt, it was neces-

sary for appellees to produce evidence at the hearing and afford appellant the right of cross-examination; and that in a civil contempt they were not entitled to be discharged upon their sworn answer. Several decisions of the Supreme Court in chancery cases, such as *O'Brien v. People ex rel. Kellogg Switchboard & Supply Co.,* 216 Ill. 354; *Rothschild & Co. v. Steger & Sons Piano Mfg. Co.,* 256 Ill. 196; *Loven v. People,* 158 Ill. 159; and *People v. Buconich,* 277 Ill. 290, where it was held the rule in criminal cases did not apply, are relied upon. *Hake v. People,* 230 Ill. 174; *Dinsmoor v. Bressler,* 164 Ill. 211; *People v. Seymour,* 272 Ill. 295; *Buck v. Buck,* 60 Ill. 105; *Crook v. People,* 16 Ill. 534, which in turn cites Underwood's case, 2 Humph. R. 48, the case of Yates, 4 John. R. 372, and Lord Mansfield's opinion in *The King v. Vaughn,* 2 Donglass R. 516, are authority for the doctrine that there is a distinction between the practice in contempt proceedings in a court of chancery and proceedings to punish contempt in a court of law; and that in cases of common-law jurisdiction for contempt the defendant is tried upon his answer and no other evidence is heard. If he purges himself of contempt by his sworn answer he is entitled to have the rule discharged. Appellant also cites *Denison Cotton Mill Co. v. Schermerhorn,* 257 Ill. 128, which was a civil contempt in an action of trover. In that case the affidavits in support of the motion to produce were positive, and not on information and belief. They showed goods had been stolen and purchased from the thief by the defendants, who had the only record of the purchases. No counter affidavit was filed, and the order was entered. A motion to vacate was supported by an affidavit setting out only legal reasons why the order should be vacated. The answer to the rule in the contempt proceeding stated the contentions in regard to the validity of the order. It does not appear that it denied any of the facts alleged in the declaration or in the affidavits in

support of the motion to produce, or that it was verified. In *People v. White,* 334 Ill. 465, another civil contempt in an election fraud case, the court held the defendants could not purge themselves by their sworn answers because of the provision of the special governing statute that the cause shall ''be tried in open court on oral testimony in a summary way.'' Clearly neither of those cases is applicable here. No holding in a civil contempt proceeding, ancillary to an action at law, contrary to the cases above cited has been brought to our attention. While section 31 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.031] provides there shall be no distinction between actions at law and suits in chancery respecting the manner of pleading, the legislature did not intend to abolish the substantive distinctions between the two forms of procedure. (*Frank v. Salomon,* 376 Ill. 439.)

However, even if the rule employed in chancery cases is to be applied in actions at law, we are not persuaded that appellant is entitled to invoke it here. While the judgment of the trial court seems to be based largely upon the sworn answer of appellees, the record shows the court carefully examined and considered the testimony taken at the two hearings before the commissioner. We do not think it was incumbent upon appellees to produce evidence in support of their sworn answer unless and until its truth was assailed. The true doctrine is that upon a sworn answer being filed, its allegations may be contradicted by testimony adduced by the petitioner. (*People v. Buconich, supra; Rothschild & Co. v. Steger & Sons Piano Mfg. Co., supra; Crook v. People, supra.*) No case is cited which holds that the defendant must first proceed to establish the truth of his sworn answer by testimony. In the case at bar, appellant made no attempt to produce any testimony on the hearing, but was content to rely upon its affidavits on information and belief and the testimony taken before the commissioner at its

instance. No testimony was offered to substantiate the allegations as to the alleged information from the reporting agency, or as to the alleged investigation by appellant's counsel. Without any proof as to the alleged information from the reporting agency, the allegation was as to hearsay only and without any probative force. In the absence of any testimony as to the alleged investigation by appellant's counsel, showing what facts he learned as the basis of his charges on information and belief, the court was without any foundation of fact upon which to find the belief had any support. Appellant had the opportunity to prove, if it could, the allegations of its petition and affidavits, but being based only upon information and belief, without proof of any facts, we know of no rule of law which required appellees to first establish by testimony the truth of their sworn answer.

The information sought under the questions which May refused to answer would not tend to show that both of the defendants entered into the contract with appellant or to establish agency. Appellant was apparently of that opinion, for it did not seek his punishment for contempt in refusing to answer, but the contempt proceeding is based only on the refusal to produce the lease. There is no testimony which tends to show the lease contains any provision as to the relations between the defendants other than as brought out in the examination of May, and none of his testimony tends to establish appellant's contentions.

The law in cases of this class is well settled. It is uniformly held that before an order can be properly entered for the production of books or writings there must be good and sufficient cause shown and that the evidence sought to be obtained is pertinent to the issues in the case. If an order is entered compelling a party to produce papers which are not relevant to the issues he may refuse to obey it, and in a prosecution for contempt he may show in defense that the court had no

authority to make the order. (*Red Star Laboratories Co. v. Pabst,* 359 Ill. 451; *Carden v. Ensminger, supra.*)

Appellant insists that the complaint here sounds in tort for the breach of an implied duty to exercise skill and care, citing *Nevin v. Pullman Palace Car Co.,* 106 Ill. 222, and that under the holding in *Skala v. Lehon,* 343 Ill. 602, it was entitled to show agency notwithstanding the complaint alleges a contract with both defendants. The answer to this is that the petition to produce the lease charges agency only on information and belief, without any proof to sustain it, while the sworn answer of appellees and the testimony of George S. May, tend to refute that contention. For an injury arising from mere negligence, there must exist between the party injured and the party inflicting it, some privity, by contract or otherwise, by reason of which the latter owes the former some legal duty. (*National Iron & Steel Co. v. Hunt,* 312 Ill. 245; *Aetna Ins. Co. v. Illinois Cent. R. Co.,* 365 Ill. 303.)

We think the fact that the testimony of May was taken prior to the hearing on the rule to show cause is of no importance. It was taken at the instance of appellant, filed in court by it and considered on the hearing by the court. Appellant introduced no further testimony. There is no proof in the record which shows the production of the lease would tend to establish an agency between appellees, privity between appellant and the corporation, or that both defendants entered into the contract.

The allegation that the method of operation is merely a subterfuge to place the assets of the Company beyond the reach of creditors, and that there is in fact no separate corporate entity is not within the issues. While the forms of pleading have been abolished by statute, it is still the law that a party is limited, in his evidence, to the claim he has made. He cannot make one claim in his complaint and recover upon proofs of another without amendment. The issue is made by the

complaint and the evidence must be limited by it, and the issues cannot be enlarged by oral claims or affidavits filed in the case. (*Walter Cabinet Co. v. Russell,* 250 Ill. 416; *Oetting v. Graham,* 373 Ill. 247; *In re Estate of Shanks,* 282 Ill. App. 1.) While the law does not require the materiality of the evidence shall appear from an inspection of the pleadings alone (*Denison Cotton Mill Co. v. Schermerhorn, supra.*) appellant has made no showing that the production of the lease is material or relevant to the issues. The assignment that the court erred in refusing to reconstruct the issues so that the corporation would be debarred from asserting the defense of lack of agency is not argued. It follows, however, from what we have said above, that there was no error in the ruling. The judgment of the circuit court is affirmed.

*Judgment affirmed.*