(Nos. 39380, 39556 cons.—

THE PEOPLE *ex rel.* General Motors Corporation, Petitioner, *vs.* NICHOLAS J. BUA, Judge, Respondent.— DELMAR FRANKLIN *et al.,* Appellees, *vs.* GENERAL MOTORS CORPORATION, Appellant.

*Opinion filed March 29, 1967.—Rehearing denied May 16, 1967.*

No. 39380.—ORIGINAL PETITION for writ of *mandamus*.

LORD, BISSELL & BROOK, of Chicago, and ALOYSIUS F. POWER, of Detroit, Michigan, (GORDON R. CLOSE, NEWELL S. BOARDMAN, and JAY M. SMYSER, of counsel,) for petitioner.

DON H. REUBEN, LAWRENCE GUNNELS, and FRANK CICERO, JR., all of Chicago, for respondent.

No. 39556.—APPEAL from the Circuit Court of Cook County; the Hon. NICHOLAS J. BUA, Judge, presiding.

LORD, BISSELL & BROOK, of Chicago, and ALOYSIUS F. POWER, of Detroit, Michigan, (GORDON R. CLOSE, NEWELL S. BOARDMAN, and JAY M. SMYSER, of counsel,) for appellant.

Louis G. Davidson and Herbolsheimer & Lannon, both of Chicago, for appellees.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

We have consolidated two cases which have come to us as the result of plaintiffs' efforts to employ discovery procedures in a products liability action initiated in the circuit court of Cook County against General Motors Corporation. Recovery was sought for personal injuries allegedly sustained in an accident of May 11, 1963, while plaintiffs were riding in a Corvair automobile manufactured by General Motors.

On June 28, 1965, in cause No. 39380, General Motors filed its motion in this court for leave to file an original petition for writ of *mandamus* or prohibition (for convenience herein referred to as the *mandamus* action) against respondent, Nicholas J. Bua, an associate judge of the circuit court of Cook County, seeking vacation of orders entered by him on April 27 and May 13, 1965. These orders were predicated upon the discovery rules of this court and directed the production by General Motors of certain documents, records and drawings for inspection by representatives of the plaintiffs. The motion for leave to file the petition was granted by order of this court on September 28, 1965, and respondent's motion to vacate our order was subsequently denied.

Cause No. 39556 involves an appeal from an order entered pursuant to plaintiffs' motion for a rule against General Motors to show cause why it should not be held in contempt, its answer to the amended complaint stricken and the defendant defaulted for its wilful conduct in refusing to comply with discovery orders. The order appealed from was entered by the trial judge on June 29, 1965, finding that General Motors had failed to show cause why its answer to the amended complaint should not be stricken,

or to show cause why it should not be defaulted for its contempt of court, and it was ordered (1) that General Motors be adjudicated to be in contempt of court, (2) that its answer to the amended complaint be stricken, (3) that judgment be entered against General Motors on the issue of liability, and (4) that trial on the issue of damages "be deferred until the final disposition of the petition for writ of *mandamus* or prohibition filed in the Supreme Court by the said defendant General Motors Corporation." Defendant has appealed directly to this court, apparently on the theory that constitutional questions are involved, and, as previously stated, we have consolidated such appeal and the *mandamus* action for our consideration. In our opinion the constitutional claims advanced in No. 39556 do not sustain the jurisdiction of this court to entertain a direct appeal (*Cf. Monier* v. *Chamberlain,* 31 Ill.2d 400); however, due to the peculiar circumstances and the interrelationship of the two actions, we retain jurisdiction of both causes under Rule 28—1E. Ill. Rev. Stat. 1965, chap. 110, par. 101.28—1E; see *Berk* v. *County of Will,* 34 Ill.2d 588.

Summarization of the history of this litigation will be helpful to an understanding of the issues. The voluminous record which was not before us at the time we granted leave to file the petition for *mandamus* discloses that plaintiffs filed their complaint against General Motors Corporation, as manufacturer of the 1961 Corvair automobile in which plaintiffs were riding, and McBroom Motor Company, which sold the used automobile to the plaintiff, Delmar Franklin. General Motors was charged with the negligent manufacture of a tie rod that was allegedly unsafe for its intended use by reason of defective materials and workmanship, and with failure to make a reasonable inspection of the tie rod. A second count of the complaint was based upon violation of an alleged warranty by General Motors that the automobile was reasonably fit for its intended use.

This count was amended on January 10, 1964, to allege the breach of express and implied warranties as to the automobile by defendant. General Motors gave notice of the taking of depositions of the plaintiffs on December 4, 1963, and on January 10, 1964, plaintiffs secured an order suspending the taking of the depositions of the plaintiffs until the parties were at issue. A motion to strike the amended complaint was denied, and defendant filed its answer on May 10, 1964, after a series of motions, countermotions and orders relating to the depositions of the parties. In June and July of 1964 certain interrogatories by the plaintiffs were answered by the defendant and certain records were produced by defendant relating to the inspection of the tie rod in question. In September, October and November of 1964 more discovery was sought and obtained by all parties, with and without orders of court.

Plaintiffs filed on January 19, 1965, a second amended complaint containing the original allegations concerning the tie rod and additionally charging General Motors with the negligent design and manufacture of the automobile so that it was likely to become highly unstable, thereby causing the driver to lose control of it. This pleading also alleged a failure to give reasonable warning to the public of these dangerous characteristics of this automobile. A second count again set up the breach of express and implied warranties by General Motors, including an implied warranty that the Corvair automobile was reasonably fit for its intended use.

On March 29, defendant filed its motion for a bill of particulars requesting plaintiffs to set forth in what respect the automobile in question was defective, dangerous and of unsafe design, and to set out or attach a copy of the express warranties upon which plaintiffs relied. On plaintiffs' motion the trial court struck the motion for a bill of particulars but held that it should stand as interrogatories. These were

answered, and General Motors then filed its answer specifically denying the allegations of negligence made against it and denying any warranties or breach thereof.

On April 27, 1965, plaintiffs presented two verified motions, one dealing with certain evidence depositions of General Motors employees scheduled to be taken in Detroit on May 10, and the other for the production by the defendant at the same time and place of certain records, documents and drawings for inspection by representatives of the plaintiffs. At the hearing on the motions it appeared that plaintiffs' counsel wanted the documents produced on May 3, since on that date depositions of some of the same witnesses and discovery of some of the same documents requested was to take place in Detroit in connection with similar litigation pending in the State of Florida. In order to accommodate counsel for General Motors as to time, the court suggested that both the production of the records and the taking of the depositions proceed at the same time on May 10, and accordingly the court entered the first of the orders (April 27) which General Motors seeks to attack by its petition for *mandamus*. This order required General Motors to produce at its offices in Detroit, Michigan, on Monday, May 10, 1965, at 9:30 A.M. "Each and all of the following records, documents, and drawings and that said defendant then and there permit the representatives of the plaintiffs in this action to inspect and copy the said records and documents at said time and place; * * *". The order further provided: "The said records, which the said defendant is hereby ordered to produce, include all engineering plans, specifications, blueprints, memoranda, written reports, reports of laboratory and proving ground tests, and all other records, papers, moving pictures and documents which show as to model years of the Corvair 1960 through 1965: I. The preliminary work, studies and tests in the designing, development and manufacture of the Corvair automobile * * *." The order then provides for the furnishing by defendant of

blueprints and documents covering a broad and comprehensive range of component parts, weights, tests, specifications and characteristics and finally, "all bulletins, notices, pamphlets and other written material disseminated by General Motors Corporation to its dealers, service stations and to the public regarding the maintenance and servicing of the Corvair automobiles."

On May 10, the day on which the original documents were to be produced under the April 27 order, General Motors presented a motion to modify that order with reference to the production of certain witnesses for evidence depositions and to excuse the defendant from producing any documents for any Corvair models subsequent to 1961. It developed at the May 10 hearing that counsel in a pending Florida case were engaging in discovery of the same 1960-62 documents which were covered in the April 27 order. After a hearing at which counsel for all parties were present, an order was entered by respondent to produce the following day at Detroit, "for inspection and copying of plaintiffs' representatives in this case all records of whatsoever nature of said defendant which were produced and are being produced for inspection by counsel in the case of Anderson v. General Motors Corporation" (the Florida case). The remainder of the prayer of the motion was continued to May 13.

On May 13, General Motors filed an affidavit by one of its staff attorneys stating that he had reviewed the order entered on April 27 as modified on May 10, The affiant stated on information and belief that while the blueprints of the Corvair showing wheels, axles, drive shaft, steering control apparatus, suspension systems and wind tests for the 1960 model were all presently available, it would take a week to furnish the material on the weight and weight distribution, one to two weeks to produce the material on camber, toe-in, oversteer and understeer and movement and rebound of the body, two weeks on the maintenance and

servicing material, more than a month to produce the road tests and tire specification materials and about 90 days to produce the design, development and manufacture material and the tests to determine the type of front and rear suspension systems. The plaintiffs on the same day, May 13, presented their motion for the production of additional data and a second motion alleging wilful refusal on the part of General Motors to produce on May 11 in Detroit the material called for in the order of May 10. This motion asked for an order striking the answer of the defendant and for a judgment of liability or in the alternative an order requiring General Motors to pay the costs incurred by plaintiffs as a result of their trip to Detroit for the inspection of records and to pay reasonable attorneys' fees for the time expended during the trip. A lengthy hearing was held before respondent, Judge Bua, on that day during which counsel for both parties engaged in charges and countercharges concerning what had transpired in Detroit on May 11. Based upon the allegations set forth in the staff attorney's affidavit, counsel for General Motors stated to the court that they could not possibly comply with the production of all of the documents called for by May 17. The court indicated that it was not asking General Motors to comply with an impossible order. The court further indicated to General Motors counsel, "In the event they cannot be produced, as I stated earlier, you may file an appropriate affidavit. If the court finds that it is not an unreasonable refusal on your part to comply, the court will not impose sanction [sic] because the court will not ask you to do something which is impossible to do." Counsel was further advised: "We will give you all the time you need before the trial in the cause." Accordingly the order of May 13, which is also attacked in the *mandamus* proceedings, was entered, which in some respects expanded the April 27 order, but principally implemented it by specifying the mechanics of documentary discovery set for May 17.

Plaintiffs' motion for the court to enter a rule against defendant to show cause why its answer to the amended complaint should not be stricken, and why defendant should not be defaulted for its wilful refusal to comply with the discovery orders, culminated in hearings on June 28 and 29, and, on the latter date, the order adjudicating General Motors to be in contempt was entered.

In cause No. 39556 we are first confronted with a contention of plaintiffs that the order of June 29 is not a final and appealable order. Plaintiffs contend that the order of June 29 amounts only to a determination of liability pursuant to sanctions authorized by Rule 19—12(3), and, as damages are yet to be determined, it is not final and appealable. (*Davis* v. *Childers,* 33 Ill.2d 297.) General Motors, however, seeks to characterize the June 29 order as a contempt adjudication accompanied by the punishment of striking defendant's pleadings and entering judgment on the issue of liability. Under this concept they contend that the contempt proceeding would be terminated and the order final and appealable.

We must concede that the June 29 order is cast in terms of a contempt proceeding, and that ordinarily such an adjudication is a final and appealable order, and an appropriate method of testing pretrial discovery orders. *Monier* v. *Chamberlain,* 35 Ill.2d 351; *Stimpert* v. *Abdnour,* 24 Ill.2d 26; *Hill* v. *Jeffrey Co.* 292 Ill. 490; *Kemeny* v. *Skorch,* 22 Ill. App. 2d 160; *Hawley Products Co.* v. *May,* 314 Ill. App. 537.

However, in the foregoing cases the punishment for the contempt consisted of the traditional fine or imprisonment. Indeed, we have not heretofore recognized the inherent power of a court to strike pleadings and enter defaults as punishment for contempt. Rather we have aligned ourselves with the doctrine of *Hovey* v. *Elliott,* 167 U.S. 409, 42 L. Ed. 215, that a court possessing plenary power to punish for contempt, may not, on the theory of punishing for con-

tempt, summarily deprive a party of all right to defend an action. *Walter Cabinet Co.* v. *Russell,* 250 Ill. 416; *Boettcher* v. *Howard Engraving Co.* 389 Ill. 75. See: *Peters* v. *Berkely,* 219 N.Y.S. 709.

In *Walter Cabinet Co.* v. *Russell,* 250 Ill. 416, 421, the court suggested: "It is a principle of fundamental justice that, however plenary may be the power to punish for contempt, no court, having obtained jurisdiction of a defendant, may refuse to allow him to answer, refuse to consider his evidence and condemn him without a hearing because he is in contempt of court." The court there also rejected an argument that the sanction was appropriate on the theory that the failure to produce documents raised a presumption that they would reveal information showing the liability of the disobedient party. The court said that it was for the legislature rather than the court to create such a presumption. Similar reasoning formed the basis of *Boettcher* v. *Howard Engraving Co.,* 389 Ill. 75.

However, subsequent to the foregoing decisions, the legislature, by section 3 of the Civil Practice Act, (Ill. Rev. Stat. 1965, chap. 110, par. 3,) authorized the Supreme Court to adopt rules governing discovery. The court has adopted Rule 19—12(3), (Ill. Rev. Stat. 1965, chap. 110, par. 101.19—12(3), which provides for the striking of pleadings, and the entry of default judgments as a sanction for nonproduction of documents. Rule 19—12(3) further authorized contempt proceedings as an alternate method of enforcing discovery orders. In our opinion section 3 of the Civil Practice Act permitted the type of sanctions imposed by the court in this case. As we understand the sense of *Walter Cabinet Co.* and *Boettcher,* based upon *Hovey* v. *Elliott,* it is for the legislature and not the courts to determine if the withholding of discovery creates a presumption sufficient to establish liability. Since our legislature has so authorized we think the foregoing cases are

inapplicable. *Hammond Packing Co.* v. *Arkansas,* 212 U.S. 322, 53 L. Ed. 530.

But we are not convinced that the dichotomy of discovery sanctions established by Rule 19—12(3) was intended to permit a trial court to render an interlocutory order final and appealable merely by the use of contempt language. The imposition of a fine or imprisonment as a sanction for contempt is final and appealable because it is an original special proceeding, collateral to, and independent of, the case in which the contempt arises. (12 I.L.P., Contempt, sec. 62, p. 47.) Such a sanction does not, as here, directly affect the outcome of the principal action. Even though the order of June 29 is cast in the language of contempt we conclude that the sanction imposed achieves its validity by virtue of Rule 19—12(3) and since it determines liability in the principal case without a determination of damages, it is not yet final and appealable. (*Davis* v. *Childers,* 33 Ill.2d 298.) The appeal in No. 39556 is accordingly dismissed.

Turning next to cause No. 39380, General Motors, in support of its petition for mandamus, contends that the orders of April 27 and May 13 exceeded the jurisdiction of the trial court, thus denying General Motors due process of law, and also that the orders violated constitutional prohibitions against unreasonable searches and seizures. In answer to these contentions the respondent maintains that the only question involved is whether the discovery orders complained about are too broad in scope, which is a matter of discretion committed to the trial judge, and that such question is not subject to review by the extraordinary writ of *mandamus.*

We agree with respondent that any error in the orders of April 27 and May 13 is not of jurisdictional dimension, and that ordinarily original *mandamus* or prohibition is an inappropriate remedy to regulate discovery in the trial

court. (*People ex rel. Atchison, Topeka and Santa Fe Railway Co. v. Clark,* 12 Ill.2d 515, 520; *People ex rel. Dolan v. Dusher,* 411 Ill. 535.) Indeed, this court has always been chary of exercising original jurisdiction even in cases involving void orders unless the issues involved were of general and compelling importance.

Nevertheless the historic extraordinary writ of *mandamus* is a valuable judicial tool which must be considered even though some of the normal criteria for its use are absent. In *People ex rel. Terry v. Fisher,* 12 Ill.2d 231, an original petition for a writ of *mandamus* was allowed to be filed to set at rest a much mooted question of a trial judge's right to compel disclosure of liability insurance. In *People ex rel. Noren v. Dempsey,* 10 Ill.2d 288, the right of a defendant to obtain a physical examination of plaintiff was established in an original *mandamus* proceeding. In *People ex rel. Prince v. Graber,* 397 Ill. 522, original *mandamus* was used to determine the duty of a nonresident plaintiff to submit to oral interrogatories in Illinois.

The present *mandamus* action brings before this court issues of great importance to the administration of justice, specifically with regard to pretrial discovery and the scope of Rules 17 and 19—12(3). Both rules were formulated to provide great flexibility and confer wide discretion in the trial judge, and their use has created substantial controversy among the trial bar. See *Monier v. Chamberlain,* 35 Ill.2d 351.

It is apparent from the voluminous record in the trial court that defendant did not exhibit an understanding of the spirit of the rules and in many instances sought to obstruct the orderly processes of discovery. However, we also feel that the plaintiffs prevailed upon the trial court to enter orders of such breadth that full compliance would be a practical impossibility.

After a careful examination of the record, we feel that it is fitting and proper in this case to exercise our super-

visory powers over the trial court by exercising our discretion in favor of considering the issues raised by this original petition for the extraordinary writ of *mandamus* or prohibition. It is to be hoped that this exercise of our discretionary jurisdiction may be justified by encouraging the bench and bar to wisely use the tools of discovery to illuminate the actual issues in the case rather than to harass and obstruct the opposing litigant. In so doing we wish to give no encouragement to the litigant who would have us review normal pretrial discovery procedure by original *mandamus*.

Rule 17 vests the trial court with great power when it authorizes it to "make any order that may be just" relating to the production of specified documents, since the multitudinous fact situations that will arise preclude the advisability of greater particularity in setting forth the powers of the court. Nevertheless such a breadth of power requires a careful exercise of discretion in order to balance the needs of truth and excessive burden to the litigants.

From a view of the entire proceedings we think the orders of April 27 and May 13 are too broad and ought to be expunged, and the trial court prohibited from enforcing them.

The accident upon which plaintiffs' complaint was based involved a 1961 Corvair automobile. The order of April 27, however, directed production of all records relating to "model years of the Corvair 1960 through 1965," and subsequently the court denied defendant's efforts to be excused from producing documents relating to models 1962 through 1965.

We think that it was an abuse of discretion to order the production of complete records for Corvair model years through 1965 in the absence of a showing of relevancy or materiality. It is apparent that the records sought for each year are voluminous and their production will require substantial expense, labor, and a certain degree of business disruption and a tendency to a possible breach of the

security of trade secrets. We feel that the production of post-1961 documents ought not have been ordered without some preliminary showing of materiality and relevancy. If such materiality or relevancy does exist we would think that this could be determined by a judicious use of interrogatories. While we indicated in *Monier* that the use of interrogatories was not a *necessary* condition precedent to discovery, it is clear that their prior use may be required by the trial judge, in the exercise of his discretion where, as here, such prior use will substantially expedite identification of relevant material.

Complaint is also made by defendant of the portions of orders which permitted discovery concurrent with and to the same extent as that being sought by plaintiffs in Florida litigation involving a 1961 Corvair automobile. Although this procedure was directed purportedly to "accommodate" the defendant, we do not find that it ever requested or agreed to it and believe the objection is well taken. Such an order presupposes that the scope of discovery and privilege in Florida and Illinois is identical, and, so far as relevancy is concerned, that the issues in the two cases were precisely the same. But more important, it raises the possibility that the Illinois action could be in part controlled by the court of another State. (*Cf. James* v. *Grand Trunk Western Railroad Co.* 14 Ill.2d 356.) We do not say that defendant could not have waived our rules of discovery and privilege by stipulating or agreeing that the same matter would be produced in both the Illinois and Florida cases. What we say is that such a procedure cannot be thrust upon the defendant as it was in this case.

In certain other respects we think defendant's objections to the April 27 order is well founded. Paragraph 1 of the April 27 order was a catch-all demand for the production of documents without the slightest degree of specificity. Indeed the breadth of this paragraph created much of the unseemly animosity between counsel in these proceedings.

When counsel for General Motors began to produce the mass of material called for by the broad terms of paragraph 1, plaintiffs' counsel repeatedly claimed that they were being harassed and inundated by masses of irrelevant material. While we concede that the motives behind such compliance may be suspect, the difficulty points up the importance of avoiding production orders lacking in sufficient specificity to enable the parties to know what documents should be produced.

While flexibility is necessary in discovery, due process requires that production orders be sufficiently specific to inform a person of his obligation thereunder, especially in light of the extreme sanctions available for a violation of such order.

Defendant also urges that the discovery orders were void because they violated constitutional rights against unreasonable searches and seizures, because they deprived defendant of its property without due process of law, and because their entry was attended by a lack of procedural due process with respect to notice and hearing. We see no significant purpose in extending this opinion by a detailed consideration of these claims. So far as the claims of a denial of substantial constitutional rights are concerned, we have but recently, in *Monier* v. *Chamberlain*, 31 Ill.2d 400, rejected an identical constitutional attack on an order directing the production of documents and what was said there is equally applicable here without the need for repetition. As regards the procedural claims, we have examined the record carefully and cannot say either that defendant was prejudiced in any manner, or that it was denied the notice and hearing contemplated by due process.

It is also contended by defendant that certain of the orders were void, first, because it was provided that plaintiffs and their counsel could have the assistance of an expert to interpret technical matters produced and, second, because defendant was ordered to have an employee present during

the production of records to identify such records and to testify to the search and all-inclusiveness of the records produced. Both requirements, we believe, were consistent with the truth-seeking purposes of discovery and within the authority of the trial court to enter such orders "as may be just." By such procedures the discovery proceedings could be greatly expedited and irrelevant matters easily eliminated, without an undue burden on defendant. *Cf. Harris* v. *Oxford Metal Spinning Co.,* 315 Ill. App. 490.

Since further discovery procedures will of necessity take place in the trial court we deem it appropriate to comment on the propriety of the sanction imposed on General Motors by the trial court. We are of the opinion that the sanction sought to be imposed in this case was improper. This is a products liability case pleaded in two counts, one alleging negligence, and the other alleging breach of warranty. In *Suvada* v. *White,* 32 Ill.2d 612, this court adopted the theory which imposes strict tort liability on the manufacturer. Under that theory, negligence need not be proved and a plaintiff has only to prove that his injury or damages resulted from a condition of the product, that the condition was an unusually dangerous one, and that the condition existed at the time the product left the manufacturer's control. However, under both counts it is necessary to prove that the plaintiff was in the exercise of due care for his own safety. It is our view that a proper sanction in such a case would be to strike any defenses of a recalcitrant defendant only on the issues affected by the refusal to comply with discovery orders. As was said by the court in *Caryl Richards, Inc.* v. *Superior Court,* 10 Cal. Reptr. 377, 380, under a statute comparable to our rule: "The sanctions the court may impose are such as are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks but the court may not impose sanctions which are designed not to accomplish the objects of the discovery but to impose punishment."

We believe that Rule 19—12(3) must be interpreted as authorizing pleadings to be stricken only when the stricken pleadings bear some reasonable relationship to the information withheld. *Walter Cabinet Co.* v. *Russell,* 250 Ill. 416; *Tot* v. *United States,* 319 U.S. 463, 87 L. Ed. 1519; *Hammond Packing Co.* v. *Arkansas,* 212 U.S. 322, 53 L. Ed. 530; *Hovey* v. *Elliott,* 167 U.S. 409, 42 L. Ed. 215.

In a products liability case the objects of discovery on the part of a plaintiff against the manufacturer could not relate either to the issue of damages, or to the issue of the plaintiffs' freedom from contributory negligence. Accordingly, in our opinion, the defendant's pleadings as to these issues should not have been stricken, even if the discovery orders were in all respects valid.

Although we have determined that the production orders in this case were too broad we believe the trial judge has exercised extreme patience in this case, and it is to be hoped that counsel will adopt a spirit of co-operation with regard to further discovery so that all material matters will be expeditiously produced in order that the truth seeking purposes of the rules will be served.

The writs of *mandamus* and prohibition are granted, and the trial court is directed to expunge the orders of April 27 and May 13, 1965, and prohibited from enforcing said orders. The appeal from the order of June 29 is dismissed.

No. 39380—*Writs awarded.*
No. 39556—*Appeal dismissed.*