**Wasily DAZENKO, Plaintiff-Appellee,**
**v.**
**JAMES HUNTER MACHINE COMPANY, Defendant-Appellant.**
**No. 16081.**

United States Court of Appeals Seventh Circuit.
April 8, 1968.

Caryl P. Bonotto, Howard T. Brinton, John M. O'Connor, Jr., of Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for defendant-appellant.

John T. Coburn, Edward J. Kelly, Coburn & Kelly, Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Plaintiff Wasily Dazenko was employed by Burton-Dixie Corporation. While at work his hand was caught between rollers in a loom, manufactured by defendant James Hunter Machine Company. He brought this action for damages for his injury.[1] After trial of the issue of liability, the jury found for plaintiff. Trial on the issue of damages followed, and the jury awarded $45,000. Defendant appealed.

The action was brought August 11, 1965. The decision of the Supreme Court of Illinois in Suvada v. White Motor Company,[2] eliminating the necessity of proving privity and negligence in so-called products liability cases, had been

1. Jurisdiction is founded on diversity. Illinois law governs.

2. (1965). 32 Ill.2d 612, 210 N.E.2d 182.

announced May 20, 1965 and was modified on denial of rehearing September 27, 1965.

It is clear that although Dazenko's complaint was framed in terms of negligence, the issue tried and submitted to the jury was, in the terms of *Suvada*, whether the arrangement and operation of the rollers in which plaintiff was injured was an unreasonably dangerous condition of the loom, as manufactured by defendant.

It is also evident that defendant claimed, among other things, that plaintiff failed to exercise ordinary care for his own safety, and such failure was a cause of the injury. The Supreme Court of Illinois has now made it clear, in People ex rel. General Motors Corp. v. Bua[3] that plaintiff must prove in a products liability case that he "was in the exercise of due care for his own safety."[4] The Dazenko trial, however, occurred in September, 1966, and court and counsel did not have the benefit of *Bua*, decided March 29, 1967. The district court declined, though requested by defendant, to instruct with respect to contributory negligence, and approached that question no closer than to say that if "the plaintiff's conduct was the proximate cause of the accident", the jury must find for defendant.

Defendant contends, on appeal, that (1) there was insufficient evidence on which to base a finding that the rollers presented an unreasonably dangerous condition, (2) that plaintiff was barred by contributory negligence, as a matter of law, and (3) that there should be a new trial on both liability and damages.

We conclude that the record presented jury issues with respect to the existence of an unreasonably dangerous condition and contributory negligence and that there must be a new trial on liability, but not on damages.

3. (1967), 37 Ill.2d 180, 226 N.E.2d 6, 16.

4. See also Dunham v. Vaughan & Bushnell Mfg. Co. (1967), 86 Ill.App.2d 315, 229

*The facts.*

Plaintiff's employer manufactures cushions for seats of automobiles. It processes sisal to form padding. The sisal loom in this case is one machine in a series on a production line. It compresses sisal, which comes to it from another machine, into a strip of matting. After passing through the needle board of the loom, where it is compressed, the matting leaves the loom by passing between two rollers, one of which has teeth and is power driven, so as to pull the matting through. (These were the rollers involved in the accident.) The matting then passes into another machine for further processing.

When the loom is started up and a new strip of matting passes through it, and through the rollers, the end of the strip must be lifted manually and placed in the next machine in the line. Two persons, called head men, normally perform this task. Plaintiff was a head man and was apparently the only head man present at the time of the accident. He and his co-workers had just been on a break, and the loom had been stopped, with no matting in it. Just before the accident the loom had been started, but no sisal was moving through it as yet.

The two rollers have horizontal axes. The lower roller is power driven; is 8 inches in diameter; and is covered with teeth about a quarter inch in length. The upper roller is not power driven; is 6 inches in diameter; and is smooth. It is held down against the tooth roller by heavy springs at each end of its axis. When the loom is running, the tooth roller revolves with its upper side moving outward from the loom, making one revolution in six seconds. The smooth roller revolves with its lower side moving outward. There is a "nip point" where the two rollers approach each other as they revolve. The nip point is inward, toward the needle board. The teeth on the lower

N.E.2d 684, 692. Brandenburg v. Weaver Manufacturing Company (1966), 77 Ill.App.2d 374, 222 N.E.2d 348.

roller are sharp and draw the matting out from the loom.

There is conflict in the evidence as to the activity of Dazenko just before the accident and as to the manner his right hand was drawn between the rollers. It can be inferred, however, that he was standing between the loom and the next machine, in the position a head man would probably stand if he were to act alone and catch the matting to lift it over to the next machine. He was facing the rollers, which were opposite his mid-section. He looked over the portion of the loom above the rollers to see when the sisal would start to come through. His shirt was caught by the teeth of the lower roller. He used his hands in an effort to free himself, and in some manner his right hand was drawn below the lower roller, toward the loom, and behind the roller, upward, into the nip point, and crushed between the rollers.

*A jury issue as to an unreasonably dangerous condition.*

■ The operation of the rollers was fully explained to the jury. Professor Boyd Hartley was called by the plaintiff as an expert and permitted by the court to state his opinions. He called attention to the nip point between the rollers, and the fact that in this machine it was on the side of the rollers away from the man. He said if the rollers were smooth you would not worry very much about a nip point in that position. But in this machine, the nip point on the opposite side created, in his opinion, a hazardous condition because the driven roller is toothed "and this would by its very de-

sign carry anything caught on it around into the nip point."

He stated four alternative ways in which the hazard could be eliminated without impairment of function and without more than nominal expense. One of his suggestions was to install a bar or plate which would almost inevitably be hit by anything caught on the tooth roller and would activate a switch, stopping the machine. Defendant offered no testimony as to the feasibility or expense of this type of protective device.

We conclude there was a jury issue whether an unreasonably dangerous condition was built into the loom.

■ Defendant objects to the qualifications of Professor Hartley, pointing out that he is a civil rather than mechanical engineer, and that although his career in industrial safety covered 18 years, his work has been more particularly in the area of fire and electrical hazards. He is a public service member of the National Safety Council and testified that in formulating his opinion he used the standards in the Council's Accident Prevention Manual for Industrial Operations, 1964 edition. We are not prepared to say that the court abused its discretion in deciding that Hartley was qualified to express opinions which would aid the jury.

*A jury issue as to plaintiff's contributory negligence.*

■ If we accept the version of the accident above stated, plaintiff inadvertently permitted his shirt to get too close to the tooth roller.[5] It can be in-

---

5. The revolving tooth roller was an obvious hazard, of substantial degree, though the nip point was hidden. In *Dunham,* supra, n. 4, the appellate court of the fourth district, indicated that contributory negligence in a products liability case can exist only where the plaintiff proceeds after discovery of a defect or with knowledge of danger. Restatement of Torts, 2d, sec. 402A, Comment (n) deals with the matter as follows:

"*n. Contributory negligence.* Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or

ferred that he was properly in the area in order to perform his work and that his attention was concentrated on watching for the matting to start through the loom. Assuming that the jury drew these inferences, we think the reasonableness of his conduct, in the light of preoccupation with the requirements of his job, was a jury question. They could have found he did not exercise ordinary care, but they could have found that he did.

### New trial on the liability issue.

■ As already indicated, the district court refused to give instructions on the subject of contributory negligence, requested by defendant. Though *Bua* had not been decided at the time of trial, it is now clear that the question of plaintiff's contributory negligence is material under the law of Illinois.

The district court did instruct that even if the loom were found to be unreasonably dangerous "if you find that the proximate cause of the injury was not the unreasonably dangerous condition of the machine, but that the proximate cause of the injury was Mr. Dazenko's course of conduct at the time, then you must find for the defendant."

■ We are unable to conclude that the instruction given sufficiently performed the office of the contributory negligence instruction requested and not

given. Plaintiff's conduct obviously had a causal connection with the accident, but such connection would not prevent recovery unless his conduct fell below the standard of ordinary care. If he did fail to exercise ordinary care, and such failure was causal, defendant was entitled to have the jury told that they must find for defendant, even if the unreasonably dangerous condition was also causal.[6]

Though the jury may well have reached the same verdict if they had been instructed on contributory negligence, defendant is entitled to a new trial.

### No new trial on damages.

■■ Defendant asserts that "many trial errors" require a new trial on damages. Counsel claims that the testimony on a certain point did not turn out quite as strong as plaintiff's counsel had prophesied in the opening statement, that the court instructed the jury on elements of damage for which there was slight evidence, and that it was error to permit plaintiff to testify through an interpreter because he knew more English than he admitted. Counsel cites no authority in support of any of his claims. We have found no prejudicial error.

The judgment will be reversed and the cause remanded with directions to set aside the verdict on liability and grant a new trial on that issue. The verdict on damages is to stand, in the event defendant is found liable.[7]

---

consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

6. Plaintiff has suggested that the comparative negligence rule, adopted by the appellate court for the second district in Maki v. Frelk (1967), 85 Ill.App.2d 439, 229 N.E.2d 284, affects this case. *Maki* is presently under consideration by the Supreme Court of Illinois, and the opinion at 229 N.E.2d 291 asserts that, except for plaintiff Maki, the new rule will "apply only to cases arising out of future occurrences commencing with the date upon which this decision becomes final."

7. The issue of liability is so distinct and separable from the issue of damages that a separate trial of the former may be had without injustice. Compare, Gasoline Products Co. v. Champlin (1931), 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188, 1189, 1191, with Gallo v. Crocker (5th Cir. 1963), 321 F.2d 876, 879. See also Morris v. Pennsylvania R. Co. (2d Cir. 1951), 187 F.2d 837, 841; Calaf v. Fernandez (1st Cir. 1917), 239 F. 795, 799; 5 Moore's Federal Practice (2d ed.), ¶ 42.03, p. 1217; Wright, Federal Courts (1963), § 97, p. 378.